## GEORGE F. HARDING

### v.

## HENRY M. SHEPARD et al.

*Filed at Ottawa June 16, 1883—Rehearing denied September Term, 1883.*

1. ADMINISTRATION OF ESTATES—SET-OFF—*as against a claim due to an estate.* In an action to recover a demand accruing to an executor or administrator after the death of the testator or intestate, the defendant can not set off a debt due from the testator or intestate in his lifetime.

2. SAME—*set-off, as against purchase price of land bought at administrator's sale.* A purchaser of land at an administrator's sale bought up a claim allowed against the estate, which he offered to set off against the demand for the purchase money. From the numerous suits and protracted litigation growing out of the settlement of the estate and the adjustment of claims, the costs and expenses of administration were greatly enhanced, and it was unknown, by reason of pending litigation, what portion of the proceeds of the sale of the land would go to the payment of other claims. so that it was impossible for the administrator or the court to know what amount of the purchase money could, consistently with the rights of other claimants then not determined, be allowed in favor of the claim so held by the purchaser. In this state of the case the administrator applied to the court which had ordered the sale, for an order to compel the purchaser to complete his purchase, and the purchaser entered a motion to require the administrator to convey to him in payment of his claim, which last motion was denied, and the purchaser ordered to pay the purchase money within thirty days, and in default thereof that the administrator sell the property again. Without appealing from these orders the purchaser filed his bill against the administrator and others to enjoin a re-sale, and seeking to compel a conveyance to him in payment of his claim, which bill the court, on a hearing, dismissed: *Held,* that the bill was properly dismissed, there being no such special circumstances as to justify a set-off.

3. SAME—*administration of estates—in chancery.* It is well settled that a court of chancery will not, except in extraordinary cases, supersede the probate court in the administration of an estate.

4. A purchaser of land at an administrator's sale, after his purchase bought a claim which had been allowed against the estate, which was due from the testator in his lifetime, and refused to pay his bid, offering to set off this claim against it. The administrator refused to allow the set-off, in view of the complicated and unsettled condition of the estate, and the purchaser applied to the circuit court which ordered the sale to compel the administrator to do so, which court decided against him. He then applied to the pro-

bate court, and that court decided the same way. Without appealing from either of these orders he filed his bill in chancery, by which he sought to take the administration of this estate from the probate court and relitigate the matters so passed upon by those courts: *Held*, that the case was not one of equitable cognizance, as all the purchaser's rights might have been fully protected in the probate court, and if that court failed to apply the proper principles of law, his remedy was by appeal.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. EDWARD ROBY, for the appellant.

Mr. M. W. FULLER, and Mr. J. P. WILSON, for the appellees.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Some time in the fall of 1866 Charles W. Ricketson died testate, at Pittsburg, Pennsylvania, where he then resided, and letters of administration, with the will annexed, were shortly after his death issued there on his estate to William Phillips, who qualified as such, and assumed the office and trust of administrator. Ricketson having left property in this State subject to the payment of his debts here, Benjamin F. Quimby, on or about the 5th day of August, 1867, applied to the county court of Cook county for letters of administration on his estate, which were issued to him on the seventh day of the same month, and Quimby thereupon entered upon the duties of his appointment. In May of the following year, it appearing that Ricketson had died testate, Quimby's letters were revoked, and letters *de bonis non*, with the will annexed, were issued to Henry M. Shepard, appellee, who, about the time of his appointment, filed an inventory, showing that there were no personal assets belonging to the estate, but that the estate had an undivided interest in the south half and the north-west quarter of section 3, township 38 north, range 13 east. At the time it was supposed, and so the inventory showed, that a two-thirds interest in these

lands belonged to the estate, but it was subsequently ascertained that the deceased owned but a half interest at the time of his death. The estate also owned an undivided half of so much of the north-east quarter of the same section as lay south of the canal, but the interest of the deceased in this latter tract was not discovered or inventoried until the 4th of February, 1870,—more than two years after the issuing of letters of administration.

It further appears from these inventories, and otherwise, that the estate's half interest in all these lands was subject to a written agreement between Ricketson and Michael Tiernan, recorded in October, 1866, wherein, among other things, it was stipulated, that in consideration of the services of Tiernan in the purchase of the land, if it sold for $150 an acre, or more, he was to receive one-half of the proceeds, after deducting the original purchase price, taxes, costs, expenses, and interest at ten per cent on said purchase price, and if sold for less than $150 an acre, then he was to receive one-fourth of said proceeds after making said deductions, Ricketson reserving the right to sell when he thought proper. The half interest in these lands not owned by Ricketson belonged, respectively, to H. Brady Wilkins and Silas Merrick, the interest of the former being one-third, and of the latter one-sixth. The lands in question were originally purchased from the canal trustees, partly on time, the trustees issuing to the purchasers certificates of purchase, which were ultimately transferred and assigned to Ricketson, and as part of the consideration of his purchase he assumed to the canal trustees the balance due on the original purchase. While this transaction was in Ricketson's name alone, it was really made for the benefit of Wilkins and Merrick, in the proportions stated, as well as for himself, and Ricketson made a declaration of trust to that effect, subject to the condition that they were respectively to pay their proportionate shares

of the unpaid purchase money which Ricketson had assumed on his purchase.

On the 29th day of November, 1869, a claim of $32,800.86 was allowed by the county court of Cook county against the estate, in favor of the said Benjamin F. Quimby, which was the only claim allowed against the estate within two years from the date of the first letters, though both inventories above mentioned, which were filed within the two years, showed the existence and terms of the Tiernan contract; and subsequently, in 1881, the probate court of Cook county allowed a claim in favor of John V. LeMoyne, as assignee of one-half of the Tiernan contract, and one in favor of George F. Harding, as assignee of the other half of said contract, to be paid in due course of administration, and from these allowances appeals were taken, and are still pending. Ricketson left at his death his widow, Polly H. Ricketson, and an only child and heir, Lizzie W. Ricketson, who were sole devisees under his will, the former having never renounced its provisions. Prior to June 17, 1870, there had been filed in the county court against the estate, in addition to the Quimby claim, the following claims: Tradesmen's National Bank of Pittsburg, $5326.54; National Bank of Lawrence County, Pa., $15,932.82; W. W. Irwin, $4375; John Earl, $1250; E. D. Jones, $1679.33; Rhodes, Rhodes & Co., $38,845.04. As to this latter claim there has been much litigation, and it seems to be still undetermined. See *Shephard* v. *Rhodes*, 60 Ill. 301.

On the day last above mentioned the administrator filed in the circuit court of Cook county a petition to sell the lands in question for the payment of debts, making the said Polly H. and Lizzie Ricketson, and one Scully, then in the occupancy of the premises, parties, who answered the petition, and upon a hearing thereof, on the 21st of the same month, an order of sale was entered. In the following month, to-wit, July, 1870, Quimby filed a bill in the same court against

Le Moyne, Shepard, and others, enjoining the sale by the administrator, which was not finally determined till in 1874, when the cause was decided in this court adversely to Quimby, a judgment being entered here dismissing complainant's bill. (See *Le Moyne* v. *Quimby et al.* 70 Ill. 399, where will be found a recital of many of the facts appearing of record in this case.)   By the great fire of October 9, 1871, the records and proceedings in the case of Quimby against Le Moyne, Shepard, and others, as well as in the proceeding by Shepard to sell the real estate, were destroyed by fire.   No steps were taken to restore the records and proceedings in the latter case until in 1874, when Shepard filed a petition for that purpose.   Polly H. and Lizzie W. Ricketson having sold and conveyed their interest in the lands to Le Moyne before the entry of the final order to sell in the proceeding by Shepard, and the said Lizzie having, in the meantime, intermarried with John Allen, the latter and Le Moyne, together with Lizzie W. Allen and Scully, were made parties to the petition by Shepard to restore proceedings to sell, Polly H. Ricketson having previously died intestate, in 1871, leaving the said Lizzie her only heir at law.   After much resistance on the part of the Allens a final order was entered in May, 1875, restoring the record as prayed for in the petition.   In November, 1874, John and Lizzie Allen filed a bill in the Superior Court of Cook county against Le Moyne, Shepard, and others, in which suit, on the bill being amended, in May, 1875, a motion was made for an injunction restraining Shepard, as administrator, from proceeding to sell, as he was about to do.   Upon the hearing of the motion, on the 9th of July following, it was denied, the motion withdrawn, and bill dismissed.   In August following, another bill of like character was again filed by and against the same parties, upon which the motion for an injunction restraining Shepard from selling under the decree, upon his petition, was renewed, George F. Harding appearing for complainants.   The application for an

injunction being resisted, the hearing of it was postponed until after the coming in of the report of sale, and its confirmation asked by the administrator, when both applications were heard together.   The circuit court refused the injunction and confirmed the sale, and the Allens appealed to this court.

The order of the court required twenty-five per cent of the purchase money to be paid at the time of the sale, and the balance upon its confirmation and the delivery of the deeds. The sale was made August 10, 1875.   The property was sold in eight distinct parcels, four of which were bid off by George F. Harding, the appellant, two by Quimby, and two by Cyrus Clark.   Appellant's purchases amounted in the aggregate to $35,000, Quimby's to $15,337.75, and Clark's to $16,-777.87.   The lands purchased by appellant and Quimby were embraced in the inventory filed within the two years, but those purchased by Clark were included in the other inventory, filed after that time.   After the sale of the administrator, to-wit, on the 24th of August, 1875, appellant purchased of Quimby his entire claim against the estate, and took from him an assignment of his interest in his purchase. Harding having thus added Quimby's purchases to his own, they amounted altogether to $50,336.50, so that while Harding was indebted to the estate in this sum, less the amount already paid by himself and Quimby on their purchases, the estate was indebted to him to the full amount of the Quimby claim, less a set-off allowed against it in the purchase of the land equal to twenty-five per cent on the amount of Quimby's purchases, in the manner hereinafter stated.   The balance of this Quimby claim, amounting to between $40,000 and $50,000, after the payment of the costs and expenses of administration, is the only claim, except those founded on the Tiernan contract, and they are still subject to litigation,— that is, entitled to share in the proceeds of the sale of the lands first inventoried, which, as just seen, amounts to the sum of $50,336.50.

At the time of the sale Harding and Clark paid, in cash, twenty-five per cent on their respective purchases, and the administrator, in view of the largeness and priority of Quimby's claim, gave him a receipt for an amount equal to twenty-five per cent on his purchase, and credited the estate with a like amount on Quimby's claim, though no money actually passed between them. After the appeal was taken from the order confirming the sale, as heretofore stated, in view of the fact the money received by the administrator as advance payment on the land would, in consequence of the appeal, be probably tied up in his hands for a considerable time, as it subsequently was, he, upon consultation with the parties, and at their request, refunded to Harding and Clark fifteen per cent of the money advanced by them, respectively, upon the express understanding that they would return it to him whenever requested to do so. The appeal from the order of the circuit court was heard at the June term, 1878, of this court, resulting in an affirmance of that order.

In May, 1877, the second bill filed by the Allens against LeMoyne, Shepard, and others, coming on to be heard, the complainants, as they had in the former case, dismissed the same, and in July following filed a third bill against the same parties, substantially the same as the other two bills. In this case LeMoyne filed a cross-bill, and the cause was heard upon the original and cross-bills in October, 1878, resulting in a decree dismissing the original bill, and in granting relief to LeMoyne under his cross-bill. The decree found that LeMoyne, as grantee of Wilkins and Merrick, was the owner of one undivided half of the lands in controversy, and as grantee of Lizzie and Polly H. Ricketson he was the owner of the other undivided half, subject to the right of Ricketson's creditors to have the same sold for the payment of his debts, and this decree, on appeal to the Supreme Court, was affirmed at its September term, 1881, and a rehearing denied at its March term, 1882. See 102 Ill. 25.

When the order confirming the sale was finally affirmed by
this court, the administrator called on appellant, and re-
quested him to comply with the terms of the sale by paying
to him the amount of his bid, to be administered under the
direction of the probate court, or at least so much thereof as
would fully warrant the administrator in reporting to the
court that the bids for the land had all been paid in, and
the administrator particularly insisted that Harding should
return to him the fifteen per cent of the purchase money
which Shepard had refunded to him on the express condition
that it should be so returned when called for, but Harding
utterly refused to do any thing in the matter, insisting the
money due from him on his purchases in reality belonged to
him, and hence he was under no obligations to pay it over.
Considerable figuring and negotiations passed between him
and the administrator with the view of compromising the
matter by ascertaining some fixed amount which the admin-
istrator would be safe in receiving, and treating the balance
as paid in, which are unimportant to detail here, as we are
of opinion he can not avail himself of them in this suit to
exonerate himself from such duties as the law cast upon him
as a purchaser at the sale.

Under these circumstances the administrator applied to
the circuit court for an order directing the bidders at the
sale to pay up their bids, and upon their failure to do so, to
order a re-sale of the property. At the same term Harding
applied for an order directing the administrator to deliver
to him the deeds, upon his executing a receipt for the amount
of the Quimby claim. The matter was heard before the cir-
cuit court on the 30th of June and 1st of July, 1881, and
an opinion delivered announcing the views of the court, but
the final order was not made till the 10th of October follow-
ing, so as to afford an opportunity of presenting the matter
to the probate court, which was done, but that court, after a
full hearing, refused to interpose, and the circuit court, on

the day last named, entered an order overruling Harding's motion, and sustaining the application of the administrator. By the order of the court then made, Harding and Clark were required to pay the amounts of their respective bids within thirty days, and in case of their failure to do so the administrator was directed to re-sell the property. At the instance of Harding a bill of exceptions, embodying the evidence heard on these motions, was taken, and signed by the judge. Clark paid up his bids, and the amount of $16,849.86 was duly reported by the administrator to the probate court. Harding, however, refused to comply with the order of the circuit court, but made other propositions to the administrator, not necessary to detail here, which the latter declined, but made a formal tender of a deed to Harding for the property purchased by him, upon the payment of the balance due on his bids, which the latter declined to do. Instead of complying with the order of the circuit court, or appealing from its order, or from the order of the probate court in relation to the same matter, the appellant filed the present bill, which necessarily involves a reconsideration of many of the same matters already passed upon in these other proceedings. On a final hearing of the cause in the Superior Court, to which it had previously been transferred from the circuit court, a decree was entered dismissing the bill, to reverse which this appeal is brought.

It moreover appears, that in consequence of the numerous suits and protracted litigation growing out of the settlement of the estate and the adjustment of the claims presented against it, the costs and expenses of administration were greatly enhanced, and at the time of filing the present bill were, to a large extent, unsettled and undetermined. Moreover, it was equally unsettled and unknown, by reason of pending litigation, what amount, if any, of the proceeds of the land purchased by Harding and Quimby would be required in payment of the claims founded upon the Tiernan contract.

It was therefore impossible, even if there was no question as to the right to do so, for the administrator to know what amount of the purchase money due from Harding could, consistently with the rights of other claimants, be set off against the Quimby claim. It is clear the court could not properly, if at all, have administered this fund, and made a proper adjustment of the unsettled claims and expenses, until the money itself had been brought into court, and any attempt to do so would necessarily have been attended with great embarrassment.

It is a well recognized rule of law that in an action to recover a demand accruing to an executor or an administrator after the death of the testator or intestate, the defendant can not set off a debt due from the testator or intestate in his lifetime. (*Newhall* v̂. *Turney,* 14 Ill. 341; *Lombard* v. *Older,* 17 Beav. 542.) Numerous authorities might be cited to the same effect, but it is unnecessary to do so. Notwithstanding this well settled rule, there doubtless might be special circumstances which would authorize such a set-off, but under the circumstances of this case, for reasons already stated, we see nothing to relieve it from the operation of the general rule.

It is also well settled that a court of chancery will not, except in extraordinary cases, supersede the probate court in the administration of an estate. (*Crain* v. *Kennedy,* 85 Ill. 340; *Heustis* v. *Johnson,* 84 id. 61; *Hales* v. *Holland,* 92 id. 498.) To maintain the present bill would be to deprive the probate court of all further power and jurisdiction over the estate. What extraordinary circumstances are there in this case that demand such heroic treatment? We fail to perceive them. In a word or two, the case seems to be this: The appellant buys land at an administrator's sale, and pays but a small portion of the purchase money. After his purchase he buys a claim allowed against the estate, which was due from the testator in his lifetime, and then refuses to pay

18—107 Ill.

the balance on his purchase, but offers to set off this claim against it. The administrator refuses to allow the set-off, and appellant applies to the circuit court, by motion, to compel him to do so, and the court, upon due consideration, decides the case against him. He then applies to the probate court, and that court decides against him. He then, without appealing from the order of either of these courts, files the present bill, by which he seeks to take the administration of the estate from the probate court, and relitigate the matters already passed upon by those courts. We do not think these facts present a case of equitable cognizance. All his rights might have been fully protected in the probate court, and if that court failed to apply the principles of law applicable to the circumstances in the case, there remained to him the same right of appeal which he would have had if it had been determined in a court of equity. We desire to be distinctly understood that the conclusion reached upon the main question in this case is based, principally, upon the fact that the appellant has already had his day in court in the other proceedings referred to, and if he was dissatisfied with the conclusion reached in them he should have appealed to a higher tribunal.

To the suggestion that the costs and expenses have since been ascertained, we are of opinion it can make no difference, for the rights of the parties before us must be passed upon as they existed at the time of filing the bill.

In view of the almost unprecedented litigation over this estate, we think we may appropriately say, in conclusion, *debet esse finis litium.*

The judgment will be affirmed.

*Judgment affirmed.*