BEDFORD QUARRIES CO. v. THOMLINSON et al.

(Circuit Court of Appeals, Seventh Circuit. June 6, 1899.)

No. 558.

1. EQUITY JURISDICTION—REMEDY AT LAW—ADMINISTRATION.
    Ordinarily a bill in equity will not lie to compel personal representatives to satisfy a debt of their decedent, since the remedy at law is adequate.

2. FEDERAL AND STATE COURTS—JURISDICTION—ADMINISTRATION.
    Such a bill will not lie in a federal court for the further reason that in general the administration of the estates of deceased persons is left to the local law.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Sherley Schooler, for appellant.

Jesse H. McCulloch, for appellees.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge. This is a suit in equity brought by the Bedford Quarries Company, a corporation of Indiana, against Joseph Thomlinson, as executor, and Sarah Thomlinson, executrix, of the last will and testament of John Thomlinson, deceased, residing at Chicago, Ill., to require the defendants to satisfy a debt of $3,554.74 and interest owing by the decedent in his lifetime to complainants for stone delivered to him upon certain contracts for that purpose. After setting out the contract for the delivery of the stone on board the cars, the delivery thereof by the complainants, the amounts paid by the deceased, and the claim for balance due, the bill sets forth that during the lifetime of the decedent complainants had frequently requested payment of the demand, and that after his death, November 10, 1897, and since the defendants came into possession of his estate, they had requested the said executors to make some provision for the payment of said indebtedness out of the funds of the estate in their hands, but that defendants have been heedless of such requests, and that their acts and omissions tend to the manifest wrong of the complainants. These are, in substance, all the facts set forth

by the bill of complaint. There was a general demurrer to the bill, and the court below dismissed the bill for want of equity. It must be conceded that the bill is very meager in its allegations of fact to bring the case within any principle of equity cognizance. There are two well-settled principles of jurisprudence which the bill seems in the main to ignore: The one is that equity will not afford relief where there is a full and ample remedy at law. The other is that in general the administration of the estates of deceased persons is left to the local law. There are no facts alleged to take the case from the operation of either of these well-settled principles of jurisprudence. The bill, no doubt, states a good cause of action at law against the decedent, and this is all. No reason is given why equity should take cognizance of the case. For aught that appears, the complainants have an adequate remedy at law for the collection of their debt. There are no allegations tending to show fraud or concealment on the part of the executors, or misappropriation of property, making a bill for discovery necessary. There is no showing that the executors had qualified or entered upon the duties of their office, that the will had been proven, or that the time had come when the executors had any power or authority to act. For all that appears, the executors may have taken possession of the property merely to preserve it until the will should be proven, and the executors should qualify and enter upon the discharge of their duties, in which event they would have no authority or power to pay debts. The bill alleges that the executors had property enough in their hands to pay complainants' debt, but fails to allege that there were not other debts to be paid, or, if there were, that there was property enough to pay all the debts in full. What right would the executors have to pay the complainants' claim in advance of any marshaling of the debts and assets of the estate, that it might be seen whether the creditors could all be paid in full? It is alleged that the will provided for the payment of debts. But that would not authorize the payment in full of debts as they are demanded, without some account being made of the condition of the estate, to see whether all creditors could be paid in full. If such a proceeding as this were allowable, any estate, however solvent under the usual prudent and orderly management which obtains in probate courts, might be ruined by an accumulation of bills in equity. If one creditor may thus pursue the estate, all may. A nonresident would have no advantage over resident creditors, and all might go into equity with their suits, and embarrass and overwhelm the estate with costs before time could be had to marshal the debts and assets. If such a bill as this could be maintained, there is no reason why the equity jurisdiction of the court might not draw to itself the entire administration of the estates of deceased persons, thus taking it out of the hands of the courts of probate, where it has generally been so well and economically administered in this country under local law. There is nothing in this bill to show that if the complainants, at the proper time, had filed their claim in the probate court, it would not, in due course of the administration of the estate, have been paid. If the claim so filed were disputed, they would, being nonresidents of the

state, be entitled to their action at law in the United States circuit court to establish their claim. But, when so established, it should be filed with the other claims against the estate, and take its place on equal terms with them. Yonley v. Lavender, 21 Wall. 276; Williams v. Benedict, 8 How. 107.

In Yonley v. Lavender the supreme court lays down the rule as follows:

"Where a statute of a state places the whole estate—real and personal—of a decedent within the custody of the probate court of the county, so that the assets may be fairly and equitably distributed among creditors, without distinction as to whether resident or nonresident, a nonresident creditor may get a judgment in a federal court against the resident executor or administrator, and come in on the estate according to the law of the state for such payment as that law, marshaling the rights of creditors, awards to debtors of its class. But he cannot, because he has obtained a judgment in the federal court, issue an execution, and take precedence of other creditors who have no right to sue in the federal courts."

Chancellor Kent states the rule correctly, but somewhat mildly, in McKay v. Green, 3 Johns. Ch. 56, as follows:

"I doubt whether a creditor ought to come into this court, in an ordinary case, and without some special cause, to collect his debt from an executor or administrator. It would seem not to be enough to state that he is a simple-contract creditor, for this would invite all suits against executors in this court. The ordinary and proper, as well as cheaper and easier, remedy, is at law."

The supreme court of New Hampshire, in Walker v. Cheever, 35 N. H. 345, lays down a similar rule, as follows:

"Under the English practice, courts of equity assume a very general jurisdiction over cases of administration, from the fact that the courts of common law and ecclesiastical courts in that country are held not to have powers adequate to give effectual relief. This jurisdiction is said to have been founded upon the principle that it is the duty of the court to enforce the execution of trusts. But it has also been said that other grounds exist, such as the necessity of taking accounts and compelling a discovery. With us there is no necessity for assuming such general jurisdiction in equity upon this subject. Our statutes providing for the settlement and distribution of estates in most cases give ample powers to the courts of probate and of common law to enforce all needful remedies to secure the rights of all parties, and, so far as the statutes may apply in the settlement of estates, they take from chancery its jurisdiction."

In the state of Illinois, where this suit was brought, the statute gives the administration of estates of deceased persons to the probate courts of the several counties. And it is well settled by the decision of the supreme court of that state that a court of equity will not exercise jurisdiction over such estates by entertaining proceedings against an administrator or executor, except in extraordinary cases, where some special reason is shown why there is not a complete and ample remedy at law. Freeland v. Dazey, 25 Ill. 294, 297; Heustis v. Johnson, 84 Ill. 61; Winslow v. Leland, 128 Ill. 304, 340, 21 N. E. 588; Shepard v. Speer, 140 Ill. 238, 246, 29 N. E. 718; Duval v. Duval, 153 Ill. 49, 53, 38 N. E. 944; Crain v. Kennedy, 85 Ill. 340; Harding v. Shepard, 107 Ill. 264, 273; Blanchard v. Williamson, 70 Ill. 647, 651; Harris v. Douglas, 64 Ill. 466, 468, 469; Armstrong v. Cooper, 11 Ill. 561, 562; Hales v. Holland, 92 Ill. 494, 497, 498; Goodman v. Kopperl, 169 Ill. 136, 48 N. E. 172.

In Hales v. Holland, 92 Ill. 494, there was a bill in equity similar

to this brought by a creditor against the heirs and administrators. The court, in deciding the case, say:

"The main question in this case is whether chancery will take jurisdiction to allow a claim, for that is the effect of the relief sought. The statute has prescribed a simple, expeditious, and inexpensive mode of presenting and allowing claims against estates in the probate court. The remedy thus given to creditors is ample and complete in all ordinary cases. Here was a simple legal claim,—a debt due by note, and susceptible of proof, and free from all equitable complications. If equity may take jurisdiction to hear proof and allow such a claim, then it is difficult to conceive a claim so purely legal in its nature that a bill might not be maintained to establish it and to control its administration. It never could have been intended by the general assembly that every person having a note, account, or other legal demand should have the right to resort to the expensive course of filing a bill for the simple purpose of probating the claim; and, if one such claim may be thus probated, all may, and estates consumed in the payment of costs of litigation. To so hold would be to defeat the statute prescribing the mode of settling estates, and to render the probate court useless, and substitute a different mode of adjusting estates from that established and required by the general assembly. See Blanchard v. Williamson, 70 Ill. 647. It is true that there may be isolated cases where a claim against an estate is equitable, or is so entangled that a court of law is unable to investigate and establish it for allowance against the estate, and the intervention of chancery may become necessary for the adjustment of such claims. But such cases are rare and of an extraordinary character. * * * It surely will not be contended that any creditor may file a bill on a purely legal demand against an estate for allowance and administration, and thus remove the settlement of the entire estate from the probate court, where the statute has placed it. To administer the assets of the estate for the satisfaction of one claim would necessitate the settlement of the entire estate. To order the payment would require an investigation of the condition of the estate, the claims allowed and preferred against it, and the situation and condition of the assets and the accounts of the executor or administrator. The chancellor surely has no such power, and, until required by legislative enactment, it cannot be sanctioned."

The subject is fully dealt with by the United States supreme court in Board of Public Works v. Columbia College, 17 Wall. 521, in a very able opinion by Mr. Justice Fields, in the manner following:

"The jurisdiction of a court of equity to reach the property of a debtor justly applicable to the payment of his debts, even when there is no specific lien on the property, is undoubted. It is a very ancient jurisdiction, but for its exercise the debt must be clear and undisputed, and there must exist some special circumstances requiring the interposition of the court to obtain possession of and apply the property. Unless the suit relates to the estate of a deceased person, the debt must be established by some judicial proceeding, and it must generally be shown that legal means for its collection have been exhausted. * * * The rule requiring the existence of special circumstances bringing the case under some recognized head of equity jurisdiction should not only be insisted upon with rigor whenever the property sought to be reached constitutes, as here, assets of a deceased debtor which have already been subject to administration and distribution; but some satisfactory excuse should be given for the failure of the creditor to present his claim, in the mode prescribed by law, to the representative of the estate, before distribution. Williams v. Gibbes, 17 How. 239, 254, 255; Pharis v. Leachman, 20 Ala. 662. In England courts of chancery took jurisdiction of bills against executors and administrators for discovery and accounts of assets, and to reach property applicable to the payment of the debts of deceased persons not merely from their general authority over trustees and trusts, but from the imperfect and defective power of the ecclesiastical court. It was sufficient that a debt existed against the estate of a decedent, and that there was property which should be applied to its payment, to justify the interposition of the court. * * * In this country there are special courts, established in all the states, having jurisdiction over the estates of deceased persons, called 'Probate Courts,' 'Orphans' Courts,' or 'Surrogate Courts,' possess-

ing, with respect to personal assets, nearly all the powers formerly exercised by the court of chancery and the ecclesiastical courts of England. They are authorized to collect the assets of the deceased, to allow claims, to direct their payment and the distribution of the property to legatees or other parties entitled, and generally to do everything essential to the final settlement of the affairs of the deceased and the claims of creditors against the estate. There is a special court of this kind in this District, called the 'Orphans' Court,' which was competent to allow the complainant's demand, but the demand was never presented to it for allowance. That court could have directed the application of the assets of the estate, if a demand had been allowed, or, if rejected, had been established by legal proceedings."

These cases are decisive of the one at bar, and the decree of the circuit court dismissing the bill is affirmed.