ALICE WIER PRINTY, Admx., *et al.* Appellees, *vs.* MICHAEL J. CAHILL, Appellant.

*Opinion filed June 18, 1908—Rehearing denied October 17, 1908.*

1. MORTGAGES—*the mortgagor is entitled to such credits as he may establish.* In a proceeding by an administratrix to foreclose a mortgage the mortgagor is entitled to have deducted from amount of the loan any credits he may be able to establish, by competent evidence, in the way of payments, advances of money or by performance of services, which by mutual agreement were to be credited upon the note; and he is not required to pay the note and probate his claims against the estate with other creditors and share *pro rata* in the assets.

2. SAME—*mortgagor is entitled to credit for items endorsed on duplicate note.* In a proceeding to foreclose a mortgage, where the original note has been found and the duplicate note, which was executed upon the assumption that the original note was lost, has been lost, the mortgagor is entitled to have credit for the items which were endorsed as credits upon the duplicate, although the original note bears no endorsements.

3. EQUITY—*equity has jurisdiction in matters of equitable set-off.* Equity has jurisdiction in matters of equitable set-off independently of the statute authorizing set-offs in actions at law, and a counter-claim should be allowed in equity where there has been a mutual credit given by each party upon the footing of the debt of the other, so that a just presumption arises that the one is understood by the parties to go in liquidation or set-off of the other; and this rule applies though the suit is brought by the administrator of one party.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

SMITH & DICKINSON, for appellant.

CHARLES W. TAYLOR, A. S. ROBERTSON, and PHILIP S. BROWN, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Alice Wier Printy, as administratrix of the estate of Mary E. A. McElroy, deceased, filed a bill in the circuit court of Cook county to foreclose a mortgage for $2387, executed by Michael J. Cahill in the lifetime of Mary E. A. McElroy. Subsequently Catherine Burns, as administratrix of the estate of J. Frank Tyrrell, was joined as complainant in the foreclosure proceeding, on the ground that her intestate was the owner of a note for $75 that was also secured by the same mortgage. Cahill answered the bill, admitting the execution of the mortgage and notes but denying that there was anything due on the larger note. Cahill set up in the answer that he had been employed by Mrs. McElroy to represent her in various business transactions for which he was entitled to compensation; that he had paid out large sums of money for her and on her account for which he was entitled to credit upon the note and mortgage, and that he had paid various sums at different times

upon said indebtedness for which he was entitled to credit. He also filed a cross-bill containing substantially the same matters that are set up in his answer, which he prayed might be adjudicated and set off against anything that might be found due upon the McElroy note. The cause was referred to a master in chancery, who heard the evidence and found for the complainants and allowed the full amount of both notes, with interest, attorney fees and costs. The cause was heard in the circuit court upon exceptions to the master's report, all of which were overruled and the master's report was approved and a decree of foreclosure entered. That decree has been affirmed by the Appellate Court, and Cahill has perfected an appeal to this court.

The questions involved for our decision are whether the court erred in disallowing the claims of Cahill, which he insists should be deducted from the amount due on the McElroy note. The circuit and Appellate Courts seem to have been of the opinion that the law requires appellant to pay his indebtedness to these estates, and if he has a counter-claim he should probate it against the estate and share with other creditors his *pro rata* share of the assets. Such is undoubtedly the law where the debtor has acquired a claim against an estate after the death of the intestate. The debtor of an estate cannot buy up claims against the deceased, and, when sued upon his indebtedness to the estate, interpose such claims as a set-off. (*Mack* v. *Woodruff,* 87 Ill. 570.) And it is equally well settled that a debtor can not set off a claim due him from the deceased against the debt which he is liable for to the administrator, growing out of a business transaction with the administrator. (*Harding* v. *Shepard,* 107 Ill. 264.) But appellant's case does not fall within either of the above classes.

The evidence shows that appellant was employed by the deceased to manage her business affairs. The deceased was a widow, seventy-four years of age, and was wholly unable to manage her business affairs. She employed appellant,

about three years before her death, to take charge of her business and represent her in all business matters. The evidence tends to prove that in pursuance of this employment appellant did perform services of great value to the deceased. The evidence tends to show that appellant paid out considerable sums of his own money for the deceased's benefit and at her request. The note and mortgage in question were given by appellant soon after he became Mrs. McElroy's agent. The evidence tends to show that it was mutually understood between appellant and the deceased that appellant was to have credit on his note and mortgage for his services and for all the money paid out by him for her. Mrs. Emma B. Collins, a witness on behalf of appellant, testified that Mrs. McElroy told her that appellant was very kind to her; that he brought in coal, split her wood and swept the floors when her arm was hurt, and that he procured provisions for her such as she wanted. This witness testifies that Mrs. McElroy told her that she had loaned Cahill $2000 on a mortgage, but she said she did not think there would be very much owing on it by the time it was due; that after Mr. Cahill was paid up there would not be much left, she thought, but that she did not care, as she did not wish to leave anything at her death. Another witness, Mulder, testified that Mrs. McElroy told him that she had sent for Mr. Cahill to manage her affairs and made him her agent to transact all her business for her. She also said to this witness that when she had her arm hurt Mr. Cahill was willing to do anything and everything for her, which he did from time to time,—swept up for her every morning, brought her coal and made her fires. She said that Mr. Cahill took her to the theater and different places of amusement where she liked to go. She also told this witness that she had loaned Mr. Cahill money, and that he bought everything for the house which she wanted in the way of provisions, and that she had told Mr. Cahill to keep track of what she loaned him, and everything he paid out

from time to time, and also of the time spent in doing things for her.

This evidence tends to show that it was the mutual understanding between the deceased and appellant that any credits that appellant might be entitled to were to be deducted from the amount of his loan. This being true, the court below erred in not allowing appellant such credits as could be established by competent evidence. The evidence also shows that the larger note involved in this suit was lost or mislaid during the lifetime of Mrs. McElroy; that Mrs. McElroy made and subscribed to an affidavit that the original note was lost or mislaid and could not be found, and thereupon appellant executed a duplicate note. This duplicate note was kept by the deceased and so far as the evidence shows she never was able to find the original. The witness Mulder, whose testimony has already been once referred to, testified that on one occasion, in the year 1904, Cahill gave the witness $30, with instructions to give it to Mrs. McElroy and to have Mrs. McElroy endorse it on the mortgage note. The witness testifies that he gave the deceased the $30; that she got the note and showed it to the witness and endorsed a credit of $30 on the back of the note. This witness also testifies that there were a number of other credits endorsed on the back of this note, aggregating $700 or $800. The witness testifies that Mrs. McElroy endorsed the credit of $30 in his presence and that he examined the note, and it was marked on the left-hand corner "Duplicate." After the death of Mrs. McElroy the duplicate note seems to have been lost and the original found, so that at the trial of this case the original note was offered in evidence, which showed no credits.

Appellant contends that he should have credit upon the original note for the items endorsed upon the duplicate, and we fail to see why he is not correct in this claim if such credits are proven. The court below rejected all this evidence and refused to consider it, and arrived at the con-

clusion that the whole amount of the original note was due and should be paid. The result was apparently reached upon the erroneous assumption that appellant in no event could be entitled to any deductions or set-offs against the administrator. This is a misapprehension of the rules of law applicable to the facts of this case. Appellant is entitled to a reduction in the amount of his note to the extent that he can establish his counter-claim, and this is true whether it be regarded as a set-off or a payment *pro tanto* of the debt. Equity has original jurisdiction in matters of equitable set-off, independently of the statute authorizing set-offs in actions at law. (*Hughes* v. *Trahern*, 64 Ill. 48; *Smith* v. *Billings*, 170 id. 543.) Such counter-claim should be allowed in equity where there has been a mutual credit given by each upon the footing of the debt of the other, so that a just presumption arises that the one is understood by the parties to go in liquidation or set-off of the other. (*Howe Machine Co.* v. *Hickox;* 106 Ill. 461; *Smith* v. *Billings, supra.*) The fact that the suit is brought by an administrator does not change this rule. (*Peacock* v. *Haven,* 22 Ill. 23.) The rights of other creditors are not prejudiced by the application of this rule, since that portion of a debt which was paid or extinguished in the lifetime of the deceased cannot, in any just sense, be regarded as an asset of the estate.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause remanded to the circuit court of Cook county, with directions to hear and consider any competent evidence appellant may offer tending to establish his claim of set-off and to allow such credits, if any, as may be proven.

*Reversed and remanded, with directions.*