13055

ALLEN v. HOLLEMAN *ET AL.*

(156 S. E., 446)

August, 1928.

202

204

*Messrs. Allen & Doyle* for appellant,

*Messrs. Greene & Earle* for respondent,

January 6, 1931.

The opinion of the Court was delivered by Mr. JUSTICE BLEASE.

The decree of his Honor, Circuit Judge Featherstone, in this cause is sustained by the holdings of this Court in *Peurifoy, Receiver, v. Gamble, Receiver,* 145 S. C., 1, 142 S. E., 788. In that case, the writer of this opinion did not participate. The opinion of the Court by Mr. Justice Stabler was concurred in by Chief Justice Watts and Mr. Justice Carter. Mr. Justice Cothran dissented. The conclusions reached in the case, however, were approved by the entire Court in the case of *Fant v. People's Bank of Sumter,* 148 S. C., 159, 145 S. E., 927. Following the decisions mentioned, the decree appealed from, which will be reported, is affirmed.

MESSRS. JUSTICES STABLER and CARTER, and MR. ACTING ASSOCIATE JUSTICE JOHN I. COSGROVE concur.

MR. JUSTICE COTHRAN (dissenting) : This is an appeal from an order of his Honor, Judge Featherstone, settling a controversy between the receiver of the People's Bank of Anderson and the administrator· d. b. n. and c. t. a. of the will of Lee G. Holleman, as will be explained hereinafter. The controversy arose in an action commenced June 27, 1922, by the administrator, for the purpose of marshaling the assets of the estate which was insolvent; the decree was in favor of the receiver, and the administrator has appealed.

The facts appear in an agreed statement and are substantially as follows:

Holleman, president of the People's Bank, died June 22, 1921, leaving a will in which his wife, Jennie C. Holleman, was appointed executrix; she qualified on June 27, 1921.

On July 18, 1921, the executrix having collected $50,000.-00 of insurance upon the life of Holleman, payable to his estate, deposited in the People's Bank $25,000.00 thereof, to her credit as executrix, retaining in her hand and doubtless depositing elsewhere, the remainder of the insurance money, $25,000.00, as an asset of the estate.

On September 5, 1921, Jennie C. Holleman duly accounted to the Probate Court for her acts as executrix and was discharged.

Thereafter, to wit, on or about the 22nd day of November, 1921, plaintiff was duly appointed administrator with the will annexed *de bonis non,* of the estate of said testator, duly qualified as said administrator, executed bond, and has continued in the discharge of the duties incident to said administration to the present time.

At the time of the death of Holleman, he was indebted to the People's Bank, upon unsecured obligations, to the amount of $77,305.38. He was likewise indebted to numerous other persons in sums sufficiently large to render his estate hopelessly insolvent. Under no circumstances will the assets of the estate be sufficient to pay as much as 25 per cent. of the amount of the unsecured claims.

On June 27, 1922, this action was brought to marshal the assets and settle the estate of Lee G. Holleman, deceased, as an insolvent estate, and as an incident to said action, an order restraining all creditors from bringing suit or establishing their claims, except in said action, was obtained.

On January 5, 1923, People's Bank of Anderson, being insolvent, suspended business and in due time went into liquidation under the provisions of Section 3981 of the Code of Laws of South Carolina, Volume 3, 1922, and subsequently thereto D. O. Browne was duly appointed receiver therefor and is now acting in that capacity.

Upon a submission of the issues to his Honor, Judge Featherstone, upon the agreed statement of facts, he filed a decree dated August 18, 1928, sustaining the contention of the receiver, holding that the approved method of settlement was for the receiver to pay to the administrator his *pro rata* of the distributable assets of the bank, based upon the administrator's deposit claim of $25,000.00, and for the administrator to pay to the receiver his *pro rata* of the distributable assets of the Holleman estate, based upon the obligations of Holleman amounting to $77,305.38; that the only right of set off was the right to set off one distributive share against the other.

Assuming simply for the purpose of illustration that the bank assets will produce a dividend of 20 per cent. and the Holleman estate 25 per cent., the respective contentions of the parties will thus appear:

The receiver's contention:

The administrator will owe the receiver, 25 per cent. of $77,305.38—$19,326.34.

The receiver will owe the administrator 20 per cent. of $25,000.00—$5,000.00

Balance to the receiver—$14,326.34.

The administrator's contention:

Assuming still that the *pro rata* which all of the creditors of the Holleman estate, ascertained by dividing the total

assets including the $25,000.00 deposit by the total debts, including of course the bank's debt, is 25 per cent., and that the bank thereon is entitled to 25 per cent. of $77,305.38, $19,326.34, apply this *pro rata* to the deposit claim of $25,-000.00, leaving unpaid $5,673.66, upon which the administrator is entitled to such *pro rata* in the distribution of the assets of the bank as are awarded to its creditors. In other words, the administrator relies upon the rule laid down by the Supreme Court of the United States in the case of *Gardner v. Chicago Co.,* 261 U. S., 453, 43 S. Ct., 424, 67 L. Ed., 741, 29 A. L. R., 622, under precisely similar circumstances, as will be explained.

The circuit decree, which is proposed to be confirmed in the leading opinion, appears to me to proceed upon the theory that the present controversy is between the heirs at law of Holleman and the receiver of the bank, as if the heirs at law would profit in the slightest degree by a decision in support of the administrator's contention. The estate of Holleman is hopelessly insolvent and, of course, there can be no recovery from it of anything for the heirs, regardless of how the present controversy may be determined. The controversy is therefore between the receiver of the bank, as a creditor of the estate, and the creditors of the estate other than the bank. The administrator is making the fight, as he should do, to protect the assets of the estate, of which he is a trustee for all of the creditors against an invasion of them by the receiver, one of such creditors. If it can be shown that the rule advanced in the circuit decree will inevitably result in a diminution of the assets of the estate to the prejudice of the interests of the creditors other than the receiver, the administrator is right in making the fight and should prevail.

Looking at the matter from another angle:

The claim of the receiver is $77,305.38.

The bank has already received the deposit of the executrix, $25,000.00. There is a balance of the insurance money in

the hands of the administrator of $25,000.00, from which the receiver will receive a *pro rata* of 25 per cent., $6,250.00. Total $31,250.00, a little over 40 per cent. of the bank's claim.

The best that other creditors of the estate can hope for is 25 per cent.; an advantage of 15 per cent. to the bank, which can only come off of the hide of the other creditors, who have no other recourse than the remainder of the insurance money in the hands of the administrator.

It must be remembered that at the time of the death and developed insolvency of Holleman in June, 1921, the bank was a going concern and solvent to all appearances; this was the state of affairs when the executrix made the $25,-000.00 deposit in July, 1921, and also when the equitable action to marshal the assets of the Holleman estate, to which the bank was a party, was instituted in June, 1922.

It is important therefore to consider the relative rights and obligations of the bank, then a going concern, and of the administrator: (1) Upon the death of Holleman; (2) upon the making of the deposit; (3) upon the institution of the equitable action, and (4) upon the insolvency of the bank in January, 1923.

Taking up first the status as of the death and insolvency of Holleman:

I think that there can be no doubt as to the proposition that as concerns the Holleman estate, the creditors, their rank, the amounts of their claims, and their legal and equitable rights, are to be determined as of the time of the death of the insolvent.

In *Morton v. Caldwell,* 3 Strob. Eq., 161, it was held, quoting syllabus:

"The proper mode of determining the proportions of assets liable to the respective creditors of a deceased debtor, is to assign them according to the amount of the debts as they existed at his death."

In the opinion the Court said:

"The rights of legatees and distributees are subordinate to and dependent upon those of creditors, inasmuch as they cannot take effect until the latter are satisfied; and if the former are fixed by the state of circumstances existing at the death of the intestate or testator, it would seem that the rights of his creditors must be equally settled at the same time."

In *Moffatt v. Thompson*, 5 Rich. Eq., 155, 57 Am. Dec., 737, the Court quotes from the *Morton v. Caldwell case*:

"But that still it is a fundamental idea in the statute—a disregard of which must render its due administration intolerably perplexing, if not impracticable—that the juncture, for the purpose of such a calculation, is the death of the debtor. It is then the remedy of the creditor ceases as to the person, and is restricted to the effects of the party indebted."

And adds:

"So far is the principle carried, that, if a creditor afterwards receives 50 per cent. of his debt from a third party, he is entitled to recover the balance from the assets of the intestate, according to the proportion assigned to his original debt. On the other hand, the amount of assets for distribution cannot be diminished by any subsequent arrangement, or management, of an unsatisfied creditor." *Wilson v. McConnell*, 9 Rich. Eq., 500; *Gillam v. Caldwell*, 11 Rich. Eq., 73; *Edwards v. Sanders*, 6 S. C., 316; *Wilson v. Kelly*, 19 S. C., 160.

At the time of the death of Holleman and his insolvency there could have arisen no question of set-off, for the executrix did not make the deposit of $25,000.00 until July thereafter. The legal right of the bank then accrued of having its claim paid out of the assets of the estate, which it seems consisted entirely of the $50,000.00 insurance money, or, as happened, if the assets were not sufficient to pay the claim in full, to collect its *pro rata* in the distribution of the assets. The creditors of Holleman other than the bank had exactly the same legal rights; rights which accrued immediately

upon the death and insolvency, and necessarily continued during all of the subsequent events, until by some action on their part they may have been deprived of them. The obligation of the executrix was commensurate with these rights, which were vested at that time by the law.

The next stage in the history of the case to be considered is the act of the executrix in depositing out of the $50,000.00 insurance money due to the estate, the sum of $25,000.00, retaining or depositing elsewhere the remainder of the insurance fund.

The deposit thus, of one-half of the assets of the estate in the bank, did not alter in the slightest degree the vested interest of the creditors of the Holleman estate, including of course the bank, in that fund. The rights which they acquired under the law in all of the assets of the estate continued, as above outlined, undiminished and unaffected by the fact of the deposit or by the fact that at that time the Holleman estate was indebted to the bank. The bank was a creditor of the Holleman estate, of exactly the same rank as all of the other creditors; it had no greater right than any one of them had, that is, to a *pro rata* distribution of the assets which included the deposit.

At the time that the deposit was made, it is clear that the bank had no right to apply it to the debt of Holleman to the bank. To have done so would clearly have withdrawn that much money from the assets of the Holleman estate, necessarily diminishing the dividend to which all of the creditors of that estate became entitled to immediately upon the death and insolvency of Holleman.

As is pertinently declared in the case of *Peurifoy v. Gamble*, 145 S. C., 1, 142 S. E., 788, 790:

"It is not contended that, at the time the receiver's deposit of $7,000.00 was made, the Barnwell Bank could have offset its claim against the insolvent Columbia bank to any extent whatever against such deposit. Clearly, if such contention were made, it could not be sustained. The making and

receiving of the deposit carried with it an implied agreement (See *Akin v. Williamson* (Tenn. Ch.), 35 S. W., 569) that the Barnwell Bank would not make such application of the deposit, but that, in accepting same, it recognized the receiver's right to its control. Otherwise it would not have been a deposit, but a payment to the Barnwell bank, as a preferred creditor, of a part of its claim against the Columbia bank, which would not be allowed."

Making the appropriate substitutions, the pronouncement would be

"It is not contended that, at the time the executrix' deposit of $25,000.00 was made, the Peoples Bank could have offset its claim against the insolvent Holleman estate to any extent whatever against such deposit. Clearly, if such contention were made, it could not be sustained. The making and receiving of the deposit carried with it an implied agreement (See *Akin v. Williamson* (Tenn. Ch.), 35 S. W., 569), that the Peoples Bank would not make such application of the deposit, but that, in accepting same, it recognized the executrix' right to its control. Otherwise it would not have been a deposit, but a payment to the Peoples Bank, as a preferred creditor, of a part of its claim against the Holleman estate, which would not be allowed."

The duty of the bank, from that time on, was to hold the deposit subject to the checks of the executrix, in transmitting to each creditor, including the bank, the proper *pro rata* in the distribution.

In addition to the controlling weight of the judgment in the *Peurifoy-Gamble case,* the authorities unanimously declare that under such circumstances the bank does not have the right to set off its claim against a deposit of trust funds. See the dissenting opinion of the writer in the *Peurifoy-Gamble case,* where a vast array of authorities are cited sustaining the proposition, not at all in conflict with the foregoing extract from the *Peurifoy-Gamble case.*

This status, with its resultant rights and obligations, continued from the time of the deposit, July, 1921, to the institution of the equity action to marshal the assets of the Holleman estate in June, 1922, to which the bank was made a party while it was a going concern. In the meantime nothing had occurred which could in the least degree have altered the situation of the parties and their respective rights and obligations.

This stage in the history of the case, the institution of the equity action to marshal assets, will be next considered.

As stated, this action was commenced in June, 1922, when the bank was a going concern and no public suspicion at least existed as to its financial condition. If a final distribution had been decreed, of the assets of the estate, and made, at any time prior to January 5, 1923, the date of the closing of the bank and placing it in the hands of a receiver as an insolvent bank, the settlement with the bank would have been easy; as the bank was at that time apparently perfectly good, the deposit of $25,000.00 would have been considered as so much cash and would of course have been included with the other assets in ascertaining and declaring the *pro rata* of each creditor, including the bank; this declared *pro rata* would have been paid to the bank by check of the administrator upon the deposit account; it naturally, in the condition of the estate, would have been less than the deposit; the balance of it, the trust fund in the hands of the bank, would have been available to the administrator in paying the other creditors their *pro rata*; it being a trust fund created by the deposit to the credit of the executrix, for the benefit of all the creditors of the estate, the bank would have had no right to divert it to any other end. This result would have been inevitable from the fact that at the death and insolvency of Holleman all of the creditors acquired the right to a *pro rata* distribution of all the assets, including the deposit, and from the further fact that the deposit was specifically created a trust fund for their benefit. No creditor of the bank

at that time or at any time thereafter could have done anything to interfere with this established right; he could not have acquired a right inconsistent with or greater than the right of the bank.

I come then to the last stage of the history of the case, the insolvency of the bank in January, 1923, thereafter.

The receiver of the defunct bank, of course, succeeded to the rights of the bank; he stands in its shoes precisely, and is bound by all of its obligations. The fact of insolvency creates no metamorphosis in the relation of the bank to the administrator or in its relation to the trust created by the deposit; he takes things as he finds them, and he finds that upon the insolvency of Holleman all of the creditors were interested in all of the assets of the estate and were the beneficiaries of a trust created by the deposit and accepted as such by the bank.

In 34 Cyc., 181, it is said:

"A receiver can acquire no other, greater, or better interest than the debtor had in the property."

In 23 R. C. L., 56:

"A receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, and equities existing at the time of his appointment. He becomes merely the assignee of the insolvent and has exactly the same rights."

In *Scott v. Armstrong,* 146 U. S., 499, 13 S. Ct., 148, 150, 36 L. Ed., 1059:

"The receiver took the assets of the Fidelity Bank as a mere trustee for creditors, and not for value and without notice, and, in the absence of statute to the contrary, subject to all claims and defenses that might have been interposed as against the insolvent corporation * * *"

In *Carroll v. Cash Mills,* 125 S. C., 332, 118 S. E., 290, 294:

"The appointment of a receiver works no metamorphosis in the title or interest to or in the assets of the insolvent; that the receiver takes possession of them as the arm of the Court, subject to all existing liens and incumbrances, to be administered under the direction of the Court, having due regard to the legal and equitable rights of the parties and those stockholders and creditors represented by the receiver."

I do not understand the circuit decree to hold that, either before or after insolvency, the bank had the right to set off its $77,000.00 claim against its deposit liability of $25,000.-00; nor do I understand that the Court in the *Peurifoy-Gamble case* held that the Barnwell Bank had the right to set off its claim against its deposit liability. The Court could hardly have intended to so hold in view of its approval of the Tennessee case of *Akin v. Williamson* (Ch.), 35 S. W., 569, which very strongly sustains the contrary. Substituting the names of the parties to the present case for those in the Tennessee case, the ruling would be as follows:

"When *People's Bank* failed it was carrying on its books an indebtedness against *Holleman* for notes and overdraft and at the same time *People's Bank* owed the *administrator of Holleman's estate* on a deposit made by him as such administrator. Now, can this latter be considered a debt from People's Bank to Holleman in such a sense that it can be set off from the debt of *Holleman to People's Bank?*

"We think this should be determined by the rights of the parties as they stood at the making of the deposit * * * We then take it as settled that the right of off-set did not exist when the deposit was made. Did the subsequent insolvency of *People's Bank* confer upon it a right of offset that it did not previously have? Certainly not. Insolvency is a good ground for the enforcement of an equitable set-off *against* the insolvent * * * but it is no ground for enforcing such a set off *in its favor.*"

Certainly before insolvency the bank had no such right; equally so after insolvency; if then it had no such right

either before or after insolvency, after insolvency the receiver's position was that of a simple creditor of the Holleman estate and a trustee debtor to it for the deposit account, in which the creditors of the bank had absolutely no interest. To award them an interest in it would necessarily impinge upon a fund which was created a trust immediately upon the death of Holleman and by the deposit to the credit of the executrix for the benefit of all the creditors of the estate. It seems impossible to avoid the conclusion that if the settlement is to be made by setting off the *pro. rata* of the bank in the distribution of the Holleman estate against the *pro rata* of the administrator in the distribution of the receiver's estate, the receiver will receive more than any other creditor of the Holleman estate, as the test of the calculation inescapably shows.

I think that the case of *Gardner v. Trust Company*, 261 U. S., 453, 43 S. Ct., 424, 67 L. Ed., 741, 29 A. L. R., 622, is conclusive of the issue here involved. The facts were these:

A coal company owed a bank a note of $15,000.00 secured by collateral and was declared a bankrupt. The trustee in bankruptcy thereafter, in the administration of the bankrupt estate, deposited with the bank to which the bankrupt owed the note, certain funds of the bankrupt estate which were credited to his deposit account as trustee. Later the bank became insolvent and a receiver was appointed. At the time of the collapse of the bank the trustee had a deposit therein of approximately $20,000.00, funds of the bankrupt estate deposited by him. Upon the claim of the trustee against the bank upon account of said deposit, the receiver of the bank paid dividends reducing the deposit claim to $13,000.00. The receiver of the bank filed with the trustee the claim of the bank on the $15,000.00 note. The trustee then filed a petition praying that he be allowed to set off his deposit claim of $13,000.00 against the $15,000.00 note. The Circuit Court of Appeals (278 F., 509), dismissed the petition, and upon appeal to the Supreme Court the judgment of the Cir-

cuit Court of Appeals was reversed, the Court holding that while there may not have been a right of set-off by the trustee, the trustee had the right to withhold dividends upon the bank's claim until the debt represented by the deposit had been paid in full.

The Court held in that case that while the deposit made by the trustee was nothing more than a debt due by the bank to him, "But when this money was deposited with this bank it seems that the bank had notice that it was part of a fund appropriated to paying the Coal Company's debts, of which the note held by the bank was one. We think that it would be inequitable to allow the bank to proceed to diminish that fund without accounting for the portion that it had received. When the bank accepted deposits from a fund against which it had a credit it must be taken to have known that it could not profit by the fact at the expense of other claimants. The bank knew the whole situation. There is nothing to show that the Trustees of the coal company when they made their deposits knew that the bank held the coal company's note. If they had known this fact it would be going far to say that they altered or could alter the position of their *cestuis que* trust for the worse. On the other hand the creditors of the bank can stand no better than the bank," and concluded:

"The Bankruptcy Court may allow the Bank's claim for such sum only as may seem to the Court to be owing above the value of the security, §57e, * * * and may withhold dividends upon that sum until the debt due to the trustee has been paid. *Western Tie & Lumber Co. v. Brown,* 196 U. S., 502, 511, 25 S. Ct., 339, 49 L. Ed., 571."

While reversing the judgment below which refused the trustee's claim of set-off, it is clear from the opinion that the Court did not sustain his claim, but decided that under the circumstances the only way to protect the interests of the creditors of the coal company, represented by the trustee, was as above indicated. So here, the only way to protect the interests of the creditors of the Holleman estate would be

for the administrator to withhold dividends payable to the receiver upon the $77,000.00 claim until the debt due to the administrator upon the deposit account has been paid. In this way the receiver will not impinge upon the assets distributable to all of the creditors of the estate.

In *Padgett v. Bank*, 141 Mo. App., 374, 125 S. W., 219, it was held that money belonging to an estate of a decedent, received by a bank after his death, could not be set off against debts owed to it by the decedent. The money so received was said to be an asset accruing to the administrator, and while during the life of the intestate the bank had the right to offset one claim against another, the death closed the accounts between them, and the bank should have turned the money afterwards received over to the administrator, probated its claims against the estate, and taken its chances with the other creditors as to their payment.

The following cases also support the general proposition that a right of set-off does not exist as between a debt due from a decedent and a claim arising after decedent's death, out of a transaction with the executor or administrator: *Golding v. McCall,* 5 Ga. App,, 545, 63 S. E., 706; *Printy v. Cahill,* 235 Ill., 534, 85 N. E., 753; *Harding v. Shepard,* 107 Ill., 264; *Cummins v. Williams,* 5 J. J. Marsh. (Ky.), 384; *Seaver v. Weston,* 163 Mass., 202, 39 N. E., 1013; *Woodward v. McGaugh,* 8 Mo., 161; *Colby v. Colby,* 2 N. H., 419 (estate insolvent); *Shaw v. Gookin,* 7 N. H., 16; *Mercein v. Smith,* 2 Hill (N. Y.), 210; *Irving v. DeKay,* 10 Paige (N. Y.), 319; *Patterson, v. Patterson,* 1 Hun., 323, approved on appeal in 59 (N. Y.), 574, 17 Am. Rep., 384, though modified on other grounds; *Dale v. Cooke,* 4 Johns. Ch. (N. Y.), 11; *Lawrence v. Vilas,* 20 Wis., 382; *Tegetmeyer v. Lumley,* T., 25, G., 3, R. B., cited in note to *Hutchinson v. Sturges,* Willes Rep., 264; *Warn v. Bickford,* 7 Price, 550; *Schofield v. Corbett,* 6 Nev. & M., 527, 11 Q. B., 779; *Monteith v. Walsh,* 10 Ont. Pr. Rep., 162.

Regarding lack of mutuality as a ground for denying the right of set-off, it was said in *Crawford v. Beal,* Dudl. (Ga.), 204, an action by an administrator on notes given him by a creditor of the estate, the plea of set-off was only good where there was an entire mutuality of debts, which was not true in this instance; that here the administrator was not indebted to the defendant, though he was bound in his character of administrator to pay the debts of the decedent, in case there was sufficient assets for that purpose; but his liability was contingent, depending upon assets, while the liability of the defendant consisted in an absolute promise. Following this case is *Crawford v. Vaughn,* Dudl. (Ga.), 205, where a set-off was claimed of a debt of the intestate to one of the defendants, against a joint debt of both the defendants, contracted with the administrator.

The case of *Western Co. v. Brown,* 196 U. S., 502, 25 S. Ct., 339, 342, 49 L. Ed., 571, cited in the *Gardner case,* is apposite. There the Western Company was held to be a trustee of certain funds due to the bankrupt estate, while it had quite a large claim against the bankrupt.

The Court concluded:

"The result will be that the tie company will be a creditor of the estate for the whole amount of its claim, and will be, at the same time, a debtor to the estate for the amount of the deductions from the payrolls collected by it, the Court below, of course, having power to take such steps as may be lawful to protect the estate in respect to the payment of dividends to the tie company, in the event that company does not discharge its obligations to the bankrupt estate."

I concede that the conclusions I have arrived at are irreconcilable with the case of *Peurifoy v. Gamble,* 145 S. C., 1, 142 S. E., 788. I think that the Court should have held in that case that the $7,000.00 deposit by Peurifoy with the Barnwell Bank was a trust fund which belonged to the creditors of the Columbia Bank, and that in line with the

*Gardner case,* the dividends due to the Barnwell Bank, upon its claim against the Columbia Bank, should have been withheld by the receiver of that bank until the Barnwell Bank had accounted for the $7,000.00 trust fund. That case was decided by a divided Court, Mr. Justice Blease not participating. In my opinion it was clearly erroneously decided and should be overruled.

The case of *Fant v. Bank,* 148 S. C., 159, 145 S. E., 927, cited in the opinion of Mr. Justice Blease as controlling the present issue, is not at all in conflict with the conclusions above arrived at. With the decision in the *Fant case* I concurred and still think it was right. In the *Fant case* there was a trust relation of course between the master who deposited the funds and the creditors of another estate, the beneficiaries of the fund; there was none between the depositor and the bank; it was the same as if the depositor had been the executor or administrator of an estate; of course, in such case if there were no trust relation between the bank and the creditors of the estate, the creditors could not rightfully claim a preference in the distribution of the assets of the bank. The *Fant case* did not involve the question of set-off; it only involved the claim to a preference; if the depositor had owed the bank, and the decision had been adverse to the depositor the case would have been pertinent to the present issue. In it the estate represented by the administrator was indebted to the bank; the bank knew that the deposit was of funds in the hands of the administrator which belonged to all of the creditors *pari passu*; it had no right to take the money of the creditors of the Holleman estate, one of which it was, and thus obtain a much greater percentage out of the assets of the estate than it was entitled to. The figures demonstrate to a mathematical certainty that this would inevitably result from an affirmance of the decree.