## In re HINES.

(District Court, W. D. Pennsylvania. March 29, 1906.)

1. BANKRUPTCY—SECURED CLAIMS—PROOF—AMOUNT.

Where a creditor of a bankrupt received certain orders drawn on third persons to secure payment of his claim, such creditor was only entitled to prove the balance of his claim after accounting for and crediting the value of the orders as provided by Bankr. Act July 1, 1898, c. 541, §§ 57e, 57h, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443].

2. SAME—ACCEPTED ORDERS—ASSIGNMENTS—TRANSFER OF PROPERTY—PREFERENCES.

Accepted orders drawn by a bankrupt on third persons given to a creditor as security for his claim were effective as assignments of the funds on which they were drawn and constituted a transfer of property within Bankr. Act 1898 relating to preferences.

3. SAME—INTENT TO PREFER—RELIEF.

Where a creditor of a bankrupt at the time he received a preference had reasonable cause to believe that a preference was intended, and should have known from the circumstances surrounding the bankrupt's condition that he was insolvent, the creditor's actual belief was immaterial on the issue of the voidability of the preference.

4. SAME—EVIDENCE.

A bankrupt at the time he assigned certain orders for work done to a creditor was slow pay, and without adequate means to carry on his building contracts. The amount due the creditor had been long past due, and for several months the bankrupt had been unable to make payments. His real estate was heavily mortgaged, and he had borrowed all he could at the bank, and was admittedly dependent on collections on his contracts to keep him going, and the creditor before taking the orders which he first refused, threatened to sue unless something was done. *Held*, that such facts were sufficient to require a finding that the creditor had knowledge that the bankrupt was insolvent at the time of the transfer, and that the same was therefore a voidable preference as provided by Bankr. Act July 1, 1898, c. 541, §§ 57g, 60b, 30 Stat. 560, 562 [U. S. Comp. St. 1901, p. 3443], as amended by Act Feb. 5, 1903, c. 487, § 12, 32 Stat. 799 [U. S. Comp. St. Supp. 1905, 689].

5. SAME—TRANSFERS BY THIRD PERSON.

Where, after a bankrupt had made an assignment for the benefit of his creditors, and just before bankruptcy proceedings were instituted against him, the firm of which he was a member paid an entire claim against him on which the firm was at most only partially liable, such payment did not constitute a preference to such creditor received from the bankrupt.[1]

Virgil L. Johnson and Q. A. Gordon, for trustee.

W. S. Reynolds and W. J. Whieldon, for Stitzinger & Co., creditors.

ARCHBALD, District Judge.[2]   C. G. Stitzinger & Co., creditors of the bankrupt, have proved a claim of $4,453.24 for lumber sold and delivered, represented at present by notes taken in payment therefor.   It is charged that preferences have been given them, amounting to some $3,800, which they retain and refuse to surrender; and a motion is thereupon made to expunge the claim.   It appears by the evidence that the bankrupt was a contractor and builder, engaged in business at Stoneboro, Mercer county, Pa., and was also interested in the Greenville Lumber Company of Greenville in the same county, a partnership of which he was the money member.   He failed about the middle of August 1904, making an assignment for the benefit of creditors under the state law, and then being forced into bankruptcy by involuntary proceedings in this court, August 23, in which an adjudication was made some three weeks later.   On August 11, being largely indebted

[1]Note.—As to when payment by a third party may amount to a preference, see Benjamin v. Chandler, 15 Am. Bankr. Rep. 439, 142 Fed. 217.

[2]Specially assigned.

to Stitzinger & Co., and being pressed for payment, he gave them an order on Undercoffer Bros., who were indebted to him on one of his building contracts; and another order on the treasurer of the Odd Fellows, for whom he was putting up a home for aged and infirm members. Both of these were given for whatever might be found due upon a final settlement, which, it is conceded, in the case of Undercoffer Bros., amounts to about $800; and in the other to about $3,000. Both orders were accepted by the parties on whom they were drawn, but, bankruptcy intervening, they have not been paid, and suits by Stitzinger & Co. for their enforcement are now pending. It is contended that these orders constitute a preference, which Stitzinger & Co. are bound to surrender, before they can prove their claim. The referee has sustained this contention, and exception having been taken thereto, the question has been certified into court.

It is to be noted in passing, that in no event would these creditors seem entitled to prove for the full amount of their debt. The orders which they secured afford a means of realizing nearly the whole of it, and must be accounted for and credited at their value; the balance above that being all that they can claim. Bankr. Act July 1, 1898, c. 541, §§ 57e, 57h, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]. But without enlarging upon that, the more serious question remains, whether the orders did not amount to a disqualifying preference. There can be no doubt as to the insolvency of the bankrupt at the time he gave them. Not only is this established by the assignment for the benefit of creditors which he was almost immediately compelled to make, and by the proceedings in bankruptcy which followed, but by the generally involved condition of his affairs. He may have thought that he could pull through; most debtors are hopeful; but there are too many contingencies, upon which he predicates his assertion of solvency to have it accepted as true. Notwithstanding the fact, also, that the orders have not been paid, they were effective as assignments of the funds on which they were drawn, and constitute a transfer of property, therefore, within the provisions of the bankruptcy act against preferences. But, by the amendment of 1903, in order to compel a creditor to surrender a preference which he has received, before he is permitted to prove his claim, the preference must be a voidable one (section 57g, Bankr. Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901 p. 3443] as amended by Act Feb. 5, 1903, c. 487, § 12, 32 Stat. 799 [U. S. Comp. St. Supp. 1905, p. 689]), essential to which, the creditor, or his agent acting in that behalf, must have had reasonable cause to believe, that that was what was intended (section 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]; 32 Stat. 799 [U. S. Comp. St. Supp. 1905, p. 689]). In the present instance, it is denied that this was the case, and it is upon this that the case turns. It is to be observed, however, that neither actual knowledge nor belief is required to be shown, but only such circumstances as would lead an ordinarily prudent man to conclude that this would be the outcome. Sundheim v. Ridge Avenue Bank (D. C.) 138 Fed. 951. And, as in the large majority of cases, this depends here upon whether the creditor knew or ought to have

known that the debtor was insolvent. Mr. Stitzinger says, that he did not, and that he believed to the contrary. But if all things pointed to this, it does not matter what he believed; it will not help him.

It is argued on the part of the trustee that Hines was very largely extended, being engaged in building contracts at different points, without adequate means to carry them on, as was evident; that he was slow pay, and that he had been owing Stitzinger & Co. $4,400, on bills which had been due a long time and which had been put into notes, which they had been carrying since early spring, and which he was able to meet with nothing but renewals and promises; that his real estate was mortgaged for $5,000, and he was borrowing at bank some $8,000 more, and was admittedly dependent on collections on his contracts, which were slow, for means to keep him going. It is pointed out that Stitzinger was most urgent and insistent in his demands, as one who knew that his debtor was shaky and the account doubtful, threatening to sue and close him up as a last resort, unless something was done; and then taking orders, in place of money, which he had at first refused, and that too, on parties, one of whom had little credit.

On the other hand it is said that Hines was a hustling young man, which entered into the estimate, and had the confidence of the community, as shown by the important building contracts which he had secured, which were a source of to be expected profit; that in his own opinion he was solvent, if circumstances favored him; that in April he made a statement to the Lumber Men's Credit Association, which Stitzinger relied on, showing that he had considerable valuable property and was worth a net $31,000; and that his debts now turn out to be $45,000 instead of $17,000, as specified by him; and that the trustee has been able to realize but $11,000 out of what he put in at nearly $50,000, was nothing which Stitzinger could know of or foresee, the shrinkage, aside from the over-valuation being due to the burning of his business block and the loss on his accounts in collection. It is denied that Stitzinger was any more urgent in demanding payment than was natural and proper, or that his acts in taking the orders as he did afford grounds for suspicion or indicate that he had any doubt as to his debtor's solvency.

But with all due allowance for what is so said, it seems to me, that the transaction cannot be sustained nor Stitzinger & Co. be relieved from the effect of it as a preference. As was manifest to the most casual observer, Hines was hard pressed and deeply involved, being without ready money, and making use of orders on customers in place of that. His account with Stitzinger & Co., as already pointed out, was large and of long standing, and had been carried for several months by notes, as the best that he could do. His credit at bank was evidently exhausted, or he would have drawn upon it, which he confessedly could not do. Neither apparently could he raise any more on his real estate. The financial statement which has been referred to was made several months back, and was not only criticised by the credit association to which it was given, but carried on its face enough to question if not discredit it. His different jobs, observably, had yielded him practically nothing,

and were a burden rather than a source of profit. To use a common expression, he had got to the end of his rope; and as a good business man, Mr. Stitzinger no doubt saw it, when as a final resort he threatened suit, unless he was taken care of. In thus monopolizing the last available asset that the debtor had to deal with, he could but know that he was getting more than his share, if Hines proved insolvent; to which everything pointed. Of this he took the risk, and now that it has gone against him, he cannot be heard to say that he did not know he was getting a preference, or that one was contemplated. When that is the necessary result of a transaction, it is conclusively presumed to have been intended. Western Tie & Timber Co. v. Brown, 194 U. S. 502, 25 Sup. Ct. 339, 49 L. Ed. 571. And it was sufficiently evident, to hold him responsible, that that would be the outcome here.

But if a preference was secured by the transaction which has been alluded to, it is clear that none can be made out of the other and further one charged, which remains to be considered. This is claimed by reason of the payment of a bill of $1,395.71 (not included in the present proof of debt), which was secured by Stitzinger & Co. out of the Greenville Lumber Company; of which it will be recalled that Hines was a member. This bill was principally for material ordered by Hines to be shipped to the company, but invoiced to him, and disposed of by him to them at a slight advance. Out of the four or five cars covered by the bill, one car was ordered by the lumber company direct, and they were therefore unquestionably liable for it. But the rest of the bill was plainly the debt of Hines, and must be so treated. It seems that after the bankruptcy proceedings had been instituted, Stitzinger went to the lumber company, and, claiming that they were liable for the whole account, because Devanny, one of the members, was present when it was ordered, demanded that it should be paid, inducing them to give him judgment notes to the amount of $229.69, and to turn over lumber for the balance. The advantage, however, which was so obtained, has none of the elements of a preference. The payment was made by the Greenville Lumber Company, after Hines had parted with his interest by the assignment for the benefit of creditors, to say nothing of the bankruptcy proceedings which followed; and was the voluntary act of the solvent members of the firm. Undoubtedly the debt was his, Mr. Stitzinger to the contrary, notwithstanding; but that does not conclude the question. It is essential to a preference of the character which is contended for that there should be a transfer by the bankrupt, of certain of his property, to the creditor preferred (Western Tie & Timber Co. v. Brown, 196 U. S. 502, 25 Sup. Ct. 339, 49 L. Ed. 571); nothing of which appears here. The payment was not by the bankrupt, nor at his instance, but by an entirely independent party with whom his relations were severed, and amounted to no more than if it had been secured from one who had guarantied the bill, or who saw fit to pay it for the credit of the debtor. Nor, strictly speaking, can it be said, directly or indirectly, to have come out of the bankrupt's property. True it is, that he had been a member of the lumber company, and his estate had an interest in the firm, which, upon liquidation, would be en-

titled to credit for the lumber represented by this bill, which he had procured for them. But this the other members could not avoid, with the result that, notwithstanding the payment to Stitzinger, they may be compelled to account for it again; and it cannot, therefore, in any sense be said, to have come out of his interest, so as to bring the case in this respect within the law.

The referee having reached a correct conclusion upon both phases of the case, the exceptions are overruled, and the report is confirmed. Let a decree be entered, expunging the claim, unless the preference secured be surrendered to the trustee within 10 days.