### BEAN et al. v. JARVIS et al.

Circuit Court of Appeals, First Circuit.
May 17, 1927.

No. 2111.

**Bankruptcy ⚎91(2)—Refusal to permit proof of extent of insolvency, as bearing on intent to prefer creditors to whom small payments were made, held erroneous.**

Refusal of court in involuntary petition in bankruptcy to permit offer of proof to show that alleged bankrupts were insolvent by at least $400,000, and that their assets were very small, as bearing on intention to prefer creditors in making certain payments, *held* erroneous, since in such a state of insolvency payments could not reasonably have been made without intent to prefer.

Appeal from the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Involuntary petition in bankruptcy by Delcie D. Bean and others against William L. Jarvis and others. From a decree of dismissal, petitioners appeal. Reversed and remanded.

Mark M. Horblit, of Boston, Mass. (Jacob Wasserman, of Boston, Mass., A. Andre Gelinas, of Fitchburg, Mass., and Thomas M. Vinson and Horblit & Wasserman, all of Boston, Mass., on the brief), for appellants.

Essex S. Abbott, of Boston, Mass. (Joseph V. Carroll, of Boston, Mass., on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from a decree of the District Court of Massachusetts dismissing an involuntary petition in bankruptcy. In the petition it was alleged that the respondents Jarvis & Glynn were copartners under the name of W. L. Jarvis & Co.; that they owed debts to the amount of $1,000; that the petitioners were creditors of Jarvis & Co. having probable claims amounting in the aggregate, in excess of securities held by them, to the sum of $500; that the nature and amount of their claims were balances due on open trading account and securities deposited with J. J. Hackett & Co., agents of W. L. Jarvis & Co., as undisclosed principal, stating the amount due each petitioner, and that their claims aggregated $377,000; that the respondents were insolvent, and within four months next preceding the date of the petition committed acts of bankruptcy; that on or about the 15th day of June, 1926, and on divers other dates thereafter, the alleged bankrupts "transferred, while insolvent, portions of their property to certain of their creditors, whose names to the petitioners were unknown, with intent to prefer such creditors over and above their other creditors." By an amendment, duly allowed, other acts of bankruptcy were added, to wit, that on or about the 15th day of June, 1926, and on divers other dates thereafter, the respondents "transferred while insolvent portions of their property, to wit, money, the exact amounts of which are to your petitioners unknown, to the following of their creditors, namely: The New England Telephone & Telegraph Company, the Western Union Telegraph Company, the Postal Telegraph Cable Company, Amory Eliot, trustee, Thomas McAuliffe, White Bros., and Charles Enos, with intent to prefer such creditors over and above their other creditors, and that in that they did on or about the 1st day of September, 1926, pay the sum of $16,500 to Henry S. McPherson, as he is receiver in bankruptcy of the estate of J. J. Hackett & Co., with intent to prefer such creditor over and above their other creditors."

This petition was filed October 9, 1926. The respondents filed an answer denying the acts of bankruptcy, that they were insolvent, that they were undisclosed principals of J. J.

Hackett & Co., and that the petitioners were creditors.

The case was tried before the court without a jury. After the petitioners had introduced evidence tending to prove the amount of each of their claims, in all aggregating more than $370,000, that W. L. Jarvis & Co. were undisclosed principals of J. J. Hackett & Co., and that the payments specified in the amended petition had been made, the court declined to hear further evidence, stating that he would assume that the respondents were "greatly" or "very much insolvent," that the petitioners were creditors of the respondents, that the respondents made payments to the creditors, between June 15th and October 1, 1926, as shown by the evidence, and that he would dismiss the petition "solely on the ground that there is no evidence before me to warrant me in finding that an act of bankruptcy has been committed."

Although counsel for the petitioners strenuously urged the court for permission to show, and made an offer of proof to the effect, that Jarvis & Co. at the times in question were insolvent by at least $400,000, and that their assets were very small, the court declined, subject to exception, to permit him to do so, on the ground that the petitioners had failed to establish that the payments made to creditors were made with intent to prefer one creditor over another, and therefore were not entitled to maintain their petition.

It also appears that the respondents, though in court at the time of the hearing, and called by the petitioners to testify as to their financial condition and intent to prefer, did not have their books of account and records with them, and, if they had had them, that the court would have declined to hear testimony as to their assets and liabilities.

At the close of the hearing the court stated that a "memorandum" would be filed for the dismissal of the petition. Later a memorandum was filed, directing that an order be entered dismissing the petition. In the memorandum the court found that the respondents were stockbrokers; that within four months prior to filing the petition they made the payments to the persons named in the amended petition; that these payments were made in settlement of current charges for rent, telephone, and telegraph service, and brokers' commissions paid at the time of the execution of orders to buy or sell stock, given by the respondents; that these payments were necessary in order to enable the respondents to continue their business as stockbrokers; that the payments made to the receiver of J. J. Hac-

kett & Co. under order of court on the petition brought by him against Jarvis were not transfers of the respondents' property made with intent to prefer; and that the same was true of the payments for telephone, telegraph, rent, and brokers' commissions—and ruled that no act of bankruptcy had been committed, even though the bankrupts were insolvent at the time of the payment.

The evidence as to the payments showed that on June 30, 1926, there was due and owing from Jarvis & Co. to the telephone company $4,208.76, and that on July 24, 1926, $4,083.51 was paid in two payments; that in July other bills were paid to the telephone company that were due and payable, amounting to $6,504.65, in nine payments; that in August three bills then due and payable, amounting to $2,133.30, were paid, one payment being for $1,200.85, one for $800.80, and one for $131.65; that in September three bills, amounting to $4,451.57, were paid, the payments being $726.27, $229.15, $3,596.15; and that in the month of October and prior to the 9th thereof two bills were paid, amounting to $1,953.21—making the total payments to the telephone company within four months prior to the petition $15,142.69.

As to the telegraph company the evidence was that it received within the four months period 18 payments, amounting to $1,171.64, the payments ranging from $12.10 to $231.11.

The payments to the receiver of Hackett & Co. aggregated $16,500, and were made in June, July, August, and September in installments ranging from $12.10 to $386.43.

The total payments to these three creditors during the four months period was $36,797.38.

The question presented was whether the payments made within four months of the filing of the petition were of such a nature and amount, and were paid under such circumstances, as would authorize a finding that they were made with intent to prefer and were preferences.

This question is approached from two angles in the assignments of error. One is that the court erred in excluding the evidence by which the petitioners offered to prove that the respondents were insolvent by at least $400,000, and that their assets were "very small," or in failing to take into account, as evidence bearing upon the respondents' intention in making the payments, their great indebtedness and their small amount of assets during the period the payments were made and down to the filing of the petition.

We think the facts disclosed in the offer of proof were material, and, if proved, would be entitled to great weight in establishing the

allegation of the creditors' petition that the payments were made with intent to prefer these creditors over other creditors, for in such a state of insolvency the respondents could not reasonably have made the payments without such intent, and that the court erred in excluding the evidence.

In Eastern Drug Co. v. Bieringer-Hanauer Co., 8 F.(2d) 838, this court had under consideration the question of preferential payments. It there appeared that the bankrupt's liabilities amounted to $25,000, and its assets were under $15,000; that its treasurer made payments to certain creditors, during the four months period, of $426.70, $100, $400, $150, $100, $300, and smaller sums to other creditors, and that the treasurer had no specific thought in mind that the necessary consequence of his acts in making the payments was that he was in fact preferring the creditors whom he paid. The treasurer testified that "he had no intention, except to pay the money due" and enable his store managers to get the necessary goods to keep the business going. It was there said: "Whether or not transfers made by an alleged bankrupt within four months of filing the petition against him constitute an act of bankruptcy must be determined from all the facts and circumstances shown by the evidence in the case." And it was held that, while "comparatively small payments * * * made by the bankrupt in the ordinary course of a going business" would not of themselves warrant the inference that they were made with intent to prefer, "all the facts and circumstances shown by the evidence" were to be taken into consideration, and, so considered, the facts of that case warranted the inference of an intent to prefer.

If the petitioners here had been permitted to show the extreme insolvency of the respondents, which they offered to do, we think that fact, taken in connection with the size of the payments and the other facts in the case (assumed by the court and shown by the evidence), not only warranted, but, in the absence of some controlling explanation, required, a finding of an intention to prefer.

See Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481; Western Tie & Timber Co. v. Brown, 196 U. S. 502, 25 S. Ct. 339, 49 L. Ed. 571; In re Dorr (C. C. A.) 196 F. 292; Rex Buggy Co. v. Hearick (C. C. A.) 132 F. 310; In re Bloch (C. C. A.) 109 F. 790.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellants.