**BIELASKI et al. v. NATIONAL CITY BANK OF NEW YORK.**

No. 112.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1934.

Lewis, Marks & Kanter, of Brooklyn, N. Y. (Lloyd B. Kanter and Sidney Squire, both of Brooklyn, N. Y., of counsel), for plaintiffs-appellants.

Shearman & Sterling, of New York City (Chauncey B. Garver and Walter K. Earle, both of New York City, of counsel), for defendant-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiffs, trustees in bankruptcy of Benedict Metal Works, Inc., brought this suit to recover, under the provisions of section 15 of the New York Stock Corporation Law (Consol. Laws N. Y. c. 59), certain money paid to the defendant to discharge notes of the bankrupt which it held. The trial was by court after a jury had been waived. That the bankrupt was insolvent when the notes were paid and intended to prefer the defendant over other creditors was not disputed. As the transaction took place more than four months before bankruptcy no recovery could be had under the Bankruptcy Act (11 US CA), and it was before section 15 of the New York Stock Corporation Law had been amended to make material the knowledge and intent of the payee as to the preference. See Brouwer v. Harbeck, 9 N. Y. 589.

The defendant held three promissory notes, each for $25,000, which were signed by the bankrupt as principal and endorsed by John J. Sparler, who was its treasurer and general manager. The defendant had loaned the bankrupt $75,000 on these notes upon representations made by Sparler in behalf of the bankrupt which had proved to be false. The defendant had, upon learning of the misrepresentations, taken the matter up with Sparler and been by him furnished certain additional notes as collateral. It had learned

that these notes were forgeries and demanded immediate payment of the three $25,000 notes which it held. On March 22, 1928, Sparler gave to the defendant the bankrupt's check for $25,456.50 drawn on the checking account of the bankrupt in the defendant bank in partial payment of the notes. This took up the entire balance in that account. On March 24, 1928, Sparler gave the defendant a cashier's check issued by the Bronx Borough Bank for $49,000 drawn to Sparler and endorsed by him individually and by the bankrupt by him as its treasurer. The forged notes held by the defendant as collateral were then delivered to Sparler and destroyed. The three $25,000 notes were marked paid and mailed to the bankrupt. Later a check for the unearned discount, the notes having been paid before maturity, was sent by the defendant to the bankrupt. The cashier's check for $49,000 which was used in paying the defendant was obtained by Sparler from the Bronx Borough Bank by giving that bank the bankrupt's check for $19,000 and a cashier's check for $30,000 which Sparler had obtained from the Mount Vernon Trust Company through the use of his own funds. When this was done, Sparler owed the bankrupt $121,191.50. The account on its books showing this balance due it from him, which was not disputed, contains entries which show that Sparler was charged with the bankrupt's check for $19,000, which he drew to himself as payee and used in part to obtain the cashier's check for $49,000 from the Bronx Borough Bank, and that his account was credited on March 29, 1928, with the $49,000. The net result was to reduce the amount owed by Sparler to the bankrupt, as shown by its books, by the amount of the cashier's check for $30,000 which he had obtained from the Mount Vernon Trust Company and to leave a book balance due from him to the bankrupt of $91,191.50. So far as appears, the defendant knew nothing of these entries in the Sparler account on the bankrupt's books.

On the trial, it was conceded that the portion of the payment of the notes which came from the balance of the bankrupt's checking account in the defendant bank could not be recovered. The court entered judgment for the plaintiff for $19,000 and denied recovery of the remaining $30,000 on the ground that the bankrupt's assets had not been depleted by that portion of the payment since Sparler, and not the bankrupt, had provided that part of the payment.

■ It is well settled that unless an insolvent debtor so disposes of his property for the benefit of a creditor that the estate of the debtor, which would otherwise be available to meet the claims of all creditors, is diminished, the creditor cannot be charged with receiving a preference. Western Tie & Timber Co. v. Brown, 196 U. S. 502, 509. 25 S. Ct. 339, 49 L. Ed. 571, 574; National Bank of Newport v. National Herkimer County Bank, 225 U. S. 178, 32 S. Ct. 633, 56 L. Ed. 1042; New York County National Bank v. Massey, 192 U. S. 138, 147, 24 S. Ct. 199, 48 L. Ed. 380, 384.

■■ When the cashier's check for $49,000 was indorsed by Sparler individually and by the bankrupt by him as its treasurer and delivered to the defendant, the payment so made had in it only $19,000 of what had previously been the bankrupt's money. It is claimed that the bankrupt's indorsement should be taken to show that Sparler as an individual first used the check to pay the bankrupt the $49,000 on account of his indebtedness to it and then as the treasurer of the bankrupt used it to pay the balance due the defendant on the notes. This seems to be a very unreal way of looking at the transaction, though it must be confessed that this would be one way to account for the indorsement. Though there is nothing to indicate that any one supposed it would add, or thought that there was any necessity for adding, any strength to the cashier's check of the Bronx Borough Bank, an accommodation indorsement would be another way to account for it. That Sparler merely wanted the check to bear some evidence that it had been used for the benefit of the bankrupt would be another, and perhaps the most reasonable, explanation of the bankrupt's indorsement. Were nothing known of the circumstances, the inference might, perhaps, be drawn from its indorsement that at some time the bankrupt owned this check. When Sparler, who was the payee, indorsed the check himself it became payable to bearer. The bankrupt's indorsement did not as a matter of law, in so far as the question of whether the bankrupt owned the check is concerned, alone require the trial court to hold that the check represented funds belonging to the bankrupt at the time the defendant received it. A jury having been waived, it was for the court to decide from all the circumstances whether Sparler first used the check to pay the bankrupt that much on the debt he owed it and then in behalf of the bankrupt used it to pay the defendant. With at least three other possible ways to account for the indorsement we cannot say as a matter of law that the trial court was in error in reaching the conclusion that the $30,000 was not the

property of the bankrupt. When it is remembered that Sparler was liable as indorser on each of the notes held by the defendant, that he had succeeded through misrepresentation in discounting them, and that when his fraud had been discovered he had used forged notes in an unsuccessful attempt to make the defendant believe that he was providing it with collateral, the use in part of his own money to get all these notes back into his possession is easily understood.

However, it may be that the payment by Sparler and the credit to him on his debt to the bankrupt was all to be taken as a part of the same transaction. If an insolvent favors one of his creditors by procuring one of his debtors to pay the debt directly to the creditor and gives the debtor credit for the payment, there is as much of a preference as though the debtor had paid the insolvent and the money been transferred by him to his creditor. National Bank of Newport v. National Herkimer County Bank, supra. Yet when the defendant was paid the balance due on the notes the liability of Sparler as indorser was extinguished. He had a standing in the transaction distinct from that of an officer of the bankrupt. Until he is permitted to offset the $30,000 against his debt to the bankrupt its estate will not be depleted. His right, if any, to that set-off is not now before us. Compare, National Bank of Newport v. National Herkimer County Bank, supra. As the matter now stands the assets of the bankrupt have not been depleted except to the extent of $19,000 by the transactions through which the cashier's check was delivered to the defendant and recovery was correctly limited to that sum.

Affirmed.

AUGUSTUS N. HAND, Circuit Judge (concurring).

While I agree with the result reached in the opinion of Judge CHASE, my reasons are different.

The $30,000 which Sparler obtained from the Mount Vernon Trust Company through the use of his own funds was represented by a draft drawn to his order and indorsed over by him to the bank. I think it was plainly transferred with the single object of relieving himself to that extent from liability on the notes held by the bank which he had indorsed. Whether or not his indorsement resulted in placing a legal title in the bankrupt is, in my opinion, quite immaterial. Even if such was its effect, the title would be a bare legal title

charged with a fiduciary obligation on the part of the bankrupt to Sparler to employ the check only in liquidation pro tanto of notes on which Sparler was liable as indorser. In First National Bank of Danville v. Phalen, 62 F.(2d) 21, the Circuit Court of Appeals of the Seventh Circuit dealt with a situation just like the present. There the trustee in bankruptcy of Adam P. Eaton sued a bank to recover an alleged preferential payment of $3,000 made to the bank within four months of bankruptcy. The bank held Adam Eaton's note for $7,500, whereon his brother Bert Eaton and one Pugh were sureties. Adam and Bert came to the bank when the note was due and produced checks aggregating $3,000 derived from Bert Eaton's own funds which he had drawn to the order of Adam Eaton and which the latter indorsed over to the bank. There was evidence that Adam was insolvent at the time of the payment and that such insolvency was known to the bank. Judge Alschuler, writing for the court, said:

"From this record it is not supposable that Bert raised this money to let Adam have it as general assets in his hands to which his general creditors might resort. It is perfectly plain that he raised the money to be paid on this note to the bank, thus relieving himself to that extent from liability, and for no other purpose whatever.

"What difference then does it make whether the checks were handed directly to the bank, or that they went through the form of having Adam indorse the insurance company's check, as well as Bert's own check which had been drawn payable to Adam? The thing to be effected was the payment to the bank, to apply upon the note, of money which came from Bert, and whereby Bert was to that extent to be relieved from his liability to the bank. The form is immaterial."

In Citizens' Nat. Bank of Gastonia v. Lineberger, 45 F.(2d) 522, the Circuit Court of Appeals of the Fourth Circuit under circumstances almost identical with the present likewise reached the conclusion that there was no unlawful preference and no depletion of the assets of the bankrupt.

We may test this by assuming that Sparler did not raise funds through the Mount Vernon Trust Company to settle his indebtedness, but had been sued upon the notes and compelled to pay them to the extent of $30,000. He would then have been subrogated to the causes of action that the bank held against the bankrupt and could have set off his pay-

ment of $30,000 against his general indebtedness of $121,191.50, leaving a net indebtedness of $91,191.50 as in the present case. In other words, he has not purchased any claim in order to obtain a set-off, but he has been compelled to take it up by virtue of his obligation as indorser.