In the Matter of **ERIE FORGE & STEEL CORPORATION**, Bankrupt.

Appeal of Thomas O. **SCHRADER**.

No. 71–1279.

United States Court of Appeals,
Third Circuit.

Submitted Feb. 14, 1972.

Decided March 22, 1972.

Robert N. Spaeder, Marsh, Spaeder, Baur, Spaeder & Schaaf, and Harry D. Martin, Elderkin, Martin & Kelly, Erie, Pa., for appellant.

John M. McLaughlin, Knox, Graham, Pearson, McLaughlin & Sennett, Erie, Pa., and John W. Dickey, Sullivan & Cromwell, New York City (Mortimer E. Graham, Erie, Pa., James E. Blackwood, New York City, on the brief) for appellee.

Before ADAMS, GIBBONS and JAMES ROSEN, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This bankruptcy case presents a novel question regarding voidable preferences. Where a bank, prior to any bankruptcy proceedings, offsets a note in default against the debtor's checking balance in the bank, thus satisfying the note in full, and then, after the initiation of the bankruptcy proceedings, in accordance with its prior agreement with a second bank, purchases an interest in a note from the debtor held by the second bank, has a voidable preference been created to the extent of the payment to the second bank?[1] In order to illuminate clearly this issue, only the essential facts of the relevant transactions will be set forth below.

In 1965, the First National Bank of Pennsylvania (First National) and the Marine Midland Grace Trust Company

---

1. The referee and district court both answered this question in the negative.

of New York (Marine Midland) agreed to loan up to $1,000,000 to Erie Forge & Steel Corporation (Erie Forge). The agreement stipulated that Marine Midland would provide 60% of the loan and First National, the balance. The banks also agreed that in the event either of them received a payment which would alter the 60-40 participation ratio in the outstanding debt, such bank would purchase an interest in the note or notes payable by Erie Forge to the other bank so as to restore the ratio to 60-40.[2]

The loan was consummated, and in 1968 it was refinanced. Marine Midland received a term note in the amount of $405,000, and First National received a note for $270,000.[3] Each note provided for the quarterly payment of principal and interest at the offices of Marine Midland. On March 31, 1969, Erie Forge defaulted, and on April 11th, Marine Midland gave written notice of the default and, pursuant to the loan agreement, demanded payment in full. At this time, Erie Forge owed $360,000 plus interest on its note to Marine Midland, and $240,000 plus interest on the note to First National.[4]

Erie Forge maintained a substantial checking account at First National. On April 28, 1969, First National offset $244,720, the balance due on Erie Forge's note to it, including interest, against the balance in Erie Forge's checking account, leaving $192,248.44 in the checking account.[5] It is conceded that this action by First National was wholly proper, and by itself did not constitute a voidable preference in favor of First National. See 11 U.S.C. § 108(a) (1970).

Two days later, on April 30, 1969, Erie Forge filed a Petition for an Arrangement with its unsecured creditors under Chapter XI of the Bankruptcy Act.[6] On May 7, 1969, in accordance with the loan agreement, First National forwarded its check for $146,832 to purchase a 40% interest in the balance of $360,000 due on Erie Forge's note to Marine Midland.[7] In return, First National received a participation certificate entitling it to receive 40% of whatever Marine Midland recovered on its note. Marine Midland then filed a claim in the bankruptcy proceeding for the full $360,000 plus interest and other sums due it on separate notes not in issue here.

The trustee of the debtor's estate (trustee) filed a turnover petition with the referee, seeking recovery of the $144,000 paid by First National to Marine Midland, on the ground that it constituted a voidable preference in favor of Marine Midland. On the basis of the undisputed facts, as set forth above, the referee dismissed the petition, and the

2. "Equal Treatment of the Banks. If either Bank receives, out of the assets of the Company [Erie Forge], including, without limitation, deposit accounts of the Company, payment on any Note payable to it at a rate in excess of similar payments received by the other, whether such amounts are paid or received or applied voluntarily or involuntarily or otherwise, then the party receiving such excess payment shall purchase for cash from the other Bank receiving payment at a lesser rate an interest or interests in the Note or Notes payable to such other Bank in such amounts as shall result in equal pro rata participation by both Banks in the principal amount of the Notes then outstanding."

3. Thus Marine Midland provided 60% of the loan and First National provided 40%.

4. At the time of default, then, Erie Forge owed 60% to Marine Midland and 40% to First National.

5. The set-off satisfied Erie Forge's debt to First National in full, and First National thereafter treated Erie Forge's note as "paid in full." In the subsequent bankruptcy proceeding, First National did not file a claim against Erie Forge.

6. Erie Forge was adjudicated bankrupt on July 15, 1969, for failure to file a feasible arrangement and the requisite acceptances of creditors thereto.

7. 40% of $360,000 is $144,000. Accordingly, First National received a credit in its account at Marine Midland for the excess of $2,832.

district court affirmed the dismissal. This appeal followed.

The precise issue before us is whether, on the facts as stated above, Marine Midland received a voidable preference when First National purchased from it a 40% participation in Marine Midland's account receivable of $360,000.

■■■ The general rule is that a debtor has an absolute right to prefer one general creditor to another, and to satisfy his debts to that creditor in preference to satisfying debts to others. It is only where the debtor becomes insolvent that the bankruptcy laws restrict a debtor from bestowing a preference on a particular creditor. In such case, a preference becomes voidable under certain circumstances, and the debtor's trustee may require that the money paid to the preferred creditor be returned to the debtor's estate for the benefit of all the creditors. The Bankruptcy Act defines a preference as follows:

> "A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class." 11 U.S.C. § 96(a) (1) (1970).

Whether a preference exists must be tested by the statutory definition, except as modified by Sections 96(e) or 110(e), which are inapplicable here. Collier has set forth the six elements for the creation of a preference by the debtor as the:

> " * * * (1) making or suffering a transfer of his property, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt [result-

ing in the depletion of the estate], (4) while insolvent, and (5) within four months of bankruptcy or of the original petition under Chapters X, XI, XII, or XIII of the Act, (6) the effect of which transfer will be to enable the creditor to obtain a greater percentage of his debt than some other creditor of the same class." 3 Collier, Bankruptcy ¶60.02 (14th ed. 1971) (footnotes omitted, brackets in original).

Unless all of the enumerated elements are present, a preference does not exist.[8] *Id.* Here, two of the elements are in dispute: (1) the transfer of the debtor's property and (2) the depletion of the debtor's estate. If either is not present, a voidable preference has not been created.

■■■ The first question to be confronted is whether the property of the debtor had been transferred when First National purchased a participation in the note held by Marine Midland. We begin our analysis of this issue with the proposition that money deposited in a bank becomes the property of the bank in the sense that the bank may use it as its own. Prudential Trust Company's Assignment, 223 Pa. 409, 413, 72 A. 798, 799 (1909). Nevertheless, the mere deposit of money in a bank does not amount to a transfer of property to the bank where, "at the same time, on the part of the bank, an obligation to pay the amount of the deposit as soon as the depositor may see fit to draw a check against it" is created. New York County Nat'l Bank v. Massey, 192 U.S. 138, 147, 24 S.Ct. 199, 201, 48 L.Ed. 380 (1904). In other words, although money deposited in a checking account in the ordinary course of business itself becomes the property of the bank, a transfer of the depositor's property has not occurred because of the obligation of the bank to pay checks drawn on the deposit. It follows, then, that a transfer by

---

8. Even if a preference exists, it is not voidable unless the creditor receiving the preference had reason to believe the debtor was insolvent. 11 U.S.C. § 60(b) (1970). This added element is not in issue in this case.

First National to Marine Midland of the money deposited by Erie Forge with First National would be a transfer of the First National's property, not Erie Forge's, if Erie Forge's right to draw checks would not be thereby affected.

■ The fact that First National offset the amount outstanding on its loan against the balance in Erie Forge's checking account—thus destroying Erie Forge's right to draw upon it—prior to purchasing the participation certificate does not change the conclusion that Erie Forge's property was not transferred to Marine Midland. Such a set-off is concededly proper since it was applied to the note, there being no suggestion of fraud or improper motive on the part of First National. Continental & Commercial Trust & Savings Bank v. Chicago Title & Trust Co., 229 U.S. 435, 33 S.Ct. 829, 57 L.Ed. 1268 (1935); In re Carnell Const. Corp., 424 F.2d 296 (3d Cir. 1970); Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823 (5th Cir. 1959), rehearing denied, 274 F.2d 320 (1960), cert. denied, 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960). It was the set-off by First National against Erie Forge's checking account with it that effected a transfer of the debtor's property, but such transfer was to First National, and according to Section 108(a), did not create a voidable preference. This transfer being proper, it operated to divest Erie Forge of ownership of the fund in question, and to vest such ownership in First National.

Thus, in the absence of any indication that the funds used by First National to purchase the participation certificate from Marine Midland were generated by a debit to Erie Forge's account not credited against the note to First National, the money involved in the inter-bank transaction was money belonging to First National and not property of the debtor.

The other element of a voidable preference in issue is depletion of the debt-or's estate. In effect, this element and the element previously discussed, transfer of the debtor's property, are two sides of the same coin. The requirement that a transfer deplete the debtor's estate is not found in the terms of Section 96, but was implied from earlier versions of the statute. *See* Western Tie & Timber Co. v. Brown, 196 U.S. 502, 25 S.Ct. 339, 49 L.Ed. 571 (1905); Continental & Commercial Trust & Savings Bank v. Chicago Title & Trust Co., 229 U.S. 435, 33 S.Ct. 829, 57 L.Ed. 1268 (1913). And this implied element has survived, even though it is not specifically provided for in the present Act. Virginia Nat'l Bank v. Woodson, 329 F.2d 836 (4th Cir. 1964); In re Forney, 299 F.2d 503 (7th Cir. 1962); *see generally,* 3 Collier, Bankruptcy ¶60.20 (14th ed. 1971).

■ Analysis of the transactions which occurred here, putting aside any irrelevant transactions which might affect the actual amount of money on deposit with either bank, clearly demonstrates that the debtor's estate had not been depleted by the inter-bank transaction. On April 28, 1969, following the set-off, First National owed Erie Forge $192,248.44, the balance remaining in the checking account. Erie Forge then owed nothing to First National, but was indebted to Marine Midland for $360,000 plus interest. On May 7, 1969, following the purchase by First National of a 40% interest in the $360,000 note, Erie Forge still owed nothing to First National, First National still owed Erie Forge $192,248.44 (assuming that Erie Forge had neither deposited nor withdrawn any additional funds), and Erie Forge still owed Marine Midland $360,000 plus interest. The only difference is that First National had $146,862 less cash and Marine Midland was now obligated to pay First National 40% of any recovery Marine Midland received on the $360,000 note. Thus, Erie Forge's balance sheet would remain unaffected by the inter-bank transaction,

and the conclusion that the debtor's estate was not depleted naturally follows.[9]

■ The debtor's trustee argues however that a bankruptcy court, as a court of equity, should look through the form of the transactions to their substance. According to his argument, First National, when it offset the note to it against the checking account, was, because of the loan agreement, acting on behalf of Marine Midland, and therefore the $144,000 paid by First National to Marine Midland constitutes a voidable preference. To support this contention, the trustee relies on In re Yale Express System, Inc., 245 F.Supp. 790 (S.D.N.Y. 1965).[10]

*Yale Express* is, however, inapposite in this situation. There, the debtor had borrowed a large amount of money from one bank. That bank, in turn, entered into an agreement with a second bank, whereby the second bank would take an undivided forty percent participation in every loan made by the first bank to the debtor. After the debtor filed a Chapter X Proceeding, the *second* bank offset the amount of its participation in the *first* bank's loans against the money which the debtor had in a checking account with the *second* bank. The district court granted the trustees turnover petition because the *second* bank was not a "creditor" of the debtor, since its only relationship to the loan was indirect through its participation in the banks' loans. Here, the debtor-creditor relationship exists between each bank and Erie Forge, and the trustee has conceded that First National's set-off was proper because of the debtor-creditor relationship between First National and Erie Forge. Furthermore, First National's offset was not exercised in favor of any other bank, creditor or not.

An additional answer to the trustee's assertion is that it is unsupported by the facts. Had First National purchased an interest in Marine Midland's note, and then attempted to effectuate a *further* offset against that interest we would be presented with a different case. However, First National acquired no ownership right in the note from Marine Midland, but only the right of participation in the proceeds. As such, First National was precluded even from filing a claim for its interest in the note, and certainly could not offset it against the checking account balance. There is no evidence in the record that First National either attempted a second offset or filed a claim based on its interest in the note to Marine Midland. Rather, Marine Midland filed a proof of claim in the bankruptcy proceeding for the entire amount of $360,000 plus interest. The district court found as a fact that the transfer of funds from First National to Marine Midland was to "purchase" a participation in the Marine Midland note. In the absence of proof that such finding is clearly erroneous, the parties and we are bound by it. Fed.R.Civ.P. 52(a).

The trustee further argues that if Erie Forge had withdrawn $144,000 from its account and transmitted it to Marine Midland, a voidable preference would have been created, and that the transactions *sub judice* are identical in substance with the above hypothetical example. This contention ignores the fact that in such case, Erie Forge would not have received, as it apparently did here, cancellation of its note from First National. Thus, the hypothetical and the present case are not substantially identical.

The judgment of the district court will be affirmed.

---

9. This result is not in conflict with the general rule that payment by a third party of a particular debt owed by the bankrupt does not create a voidable preference, since the estate of the debtor would not thereby be diminished. Virginia Nat'l Bank v. Woodson, 329 F.2d 836 (4th Cir. 1964); Dressel v. North State Lumber Co., 119 F. 531 (D.N.C.1902).

10. It seems that this argument is inconsistent with the trustee's concession that the offset by First National was proper under Section 108(a).